HOLLYWOOD PLAYS, INC., et al., Appellants-Respondents, *v.* COLUMBIA PICTURES CORPORATION, Respondent-Appellant.

Judgment affirmed.

PECK, P. J. (dissenting). It seems to me that the exchange of telegrams asserted to constitute a contract between the parties did not constitute a contract because there was lacking agreement on an essential term, i.e., the extent of the television and radio rights which defendant was to acquire.

It appears that in the negotiations preceding the telegraphic exchange the negotiator for the defendant, Cohn, made the acquisition of all television and radio rights a condition of the contract. The telegram from Schwebel in behalf of plaintiffs, offering world picture rights, did not mention radio and television rights, and the reply from Cohn specified that the contract to be prepared should contain usual and customary provisions, including television and radio provisions. If, as plaintiffs contend and the trial court concluded, motion-picture rights embrace television and radio rights in a customary form, and the television and radio provisions in a contract for the sale of motion-picture rights are stereotyped, it can be said that the reference to television and radio provisions in the telegram from defendant added no terms to the contract proffered by plaintiffs. If, however, television and radio provisions are not stereotyped and remained open for negotiation, the exchange of telegrams did not amount to a contract, either because the telegram from defendant introduced new terms into the arrangement or there was not a meeting of the minds on television and radio terms, which are concededly important.

I am unable to conclude that the television and radio provisions of a contract for the sale of motion-picture rights are stereotyped and that there did not remain for negotiation between the parties an essential term of the contract. It was conceded at the trial that "usual and customary other provisions" means usual and customary for the defendant. It appears that the usual and customary provisions in contracts of the defendant for the acquisition of motion-picture rights included a grant of all radio and television rights. It also appears, however, that the grant of radio and television rights in contracts for the sale of motion-picture rights in a stage play had to be negotiated through the Dramatists Guild acting in behalf of the playwright, and that the Guild refuses to grant the broad rights which the buyer seeks and insists upon changes in the printed forms which the motion-picture companies submit.

Plaintiffs' expert witness, Rumsey, testified to the negotiating process which the radio and television provisions had to go through and the respects in which the Dramatists Guild substantially cuts down the rights which the motion-picture companies seek. While he testified to the usual differences between what the companies ask and what they get, it is quite clear that the subject remains one for negotiation, and it is significant that the formal draft of contract between the parties here, as far as it got, contained radio and television provisions different in several respects from the provisions which Rumsey testified were usual after the negotiations with the Dramatists Guild were completed.

Plaintiffs point out that the final agreement between the parties did not break down on any question of radio and television rights, but on an assertion by defendant that there were defects in plaintiffs' claim of title. That fact does not, however, confine defendant in its attack upon the alleged contract, if in fact there was no contract. It may be that defendant would have been satisfied with the radio and television rights spelled out in the draft of agreement, if it could secure them, but the fact remains that there was no agreement on the extent of the radio and television rights. If defendant bargained for what Cohn says he bargained for, that is full radio and television rights, it cannot be said that the exchange of telegrams assured the defendant of such rights. Rather, the contention of plaintiffs is that the customary radio and television provisions were something substantially less than full rights but yet something sufficiently understood and specific by virtue of the practices of the Dramatists Guild as to be stereotyped. Failing to find certainty and definiteness in what those rights would be, and finding that the parties had not agreed on what those rights would be, it seems to me that there remained open here, after the telegrams were exchanged, an important element of the contract for further negotiation, and therefore the exchange of telegrams between the parties did not constitute a contract.

The judgment should be reversed and the complaint dismissed.

Dore, Cohn, Callahan and Shientag, JJ., concur in decision; Peck, P. J., dissents in opinion and votes to reverse and dismiss the complaint.

Judgment affirmed. No opinion.