[Civ. No. 16798. First Dist., Div. One. June 21, 1956.]

HOWARD L. METTS, Respondent, v. CENTRAL STAND-ARD LIFE INSURANCE COMPANY OF ILLINOIS, Appellant.

Hardin, Fletcher, Cook & Hayes and Lewis P. May for Appellant.

Schofield & Hannegan and Louis F. Schofield for Respondent.

BRAY, J.—Defendant appeals from a judgment granting plaintiff $5,000 for refusal to perform an insurance contract insuring plaintiff and his family against poliomyelitis.

### QUESTION PRESENTED

Did a contract of insurance arise? (a) Was the application an offer of immediate insurance coverage? (b) If so, did plaintiff meet its terms?

### FACTS

On October 18, 1951, plaintiff Howard L. Metts was appointed by defendant Central Standard Life Insurance Company as an agent to sell polio insurance policies. Defendant furnished Metts with application forms. On November 8, 1951, plaintiff mailed an application in behalf of one Hutchinson and his family to the company for polio insurance. When Hutchinson's policy was received it showed November 8, 1951, the same date as the application, as the effective date.

On May 15, 1952, plaintiff filled out and mailed two applications, together with his personal check for the premiums on both, to the company. One of these applications was for himself and family, the other for a neighbor and family. On his application plaintiff failed to answer the question: "Have you or any members of your family had polio (Poliomyelitis) within the last 90 days? (Answer Yes or No)." Plaintiff testified that his failure to answer this question was "just an oversight on my part," and that no member of his family had had polio within 90 days of the application. The applications were received by the company May 23d. The neighbor's policy was sent to plaintiff for delivery but no policy for plaintiff or his family was ever written. The company returned plaintiff's application (when does not appear).

Before plaintiff mailed his application, a child in his neighborhood had contracted polio. On May 18, 1952, plaintiff's 16½-month-old son began running a fever. He was taken to the hospital and examined that evening. The diagnosis was acute tonsillitis. The doctor felt that there was

no sign of polio. On May 21, 1952, the diagnosis was, for the first time, polio

Plaintiff notified the company on May 28, 1952, that his son had polio.

On June 13, 1952, the company answered, denying coverage because of the failure to answer the question and because "in any event" the policy would have been dated subsequent to May 21st. The company wrote plaintiff again on July 24, 1952, asking for a reply, and refunding his premium by check, which plaintiff cashed. Plaintiff replied to this letter.

Plaintiff filed a complaint for damages on June 12, 1953. At the trial, plaintiff testified that he received no instructions from the company to the effect that he had authority as an agent to bind the company. And he presumed that an agent had no authority to bind the company unless given such authority by the company. He stated that the words "no waiting period," which were on the application, meant to him that any person who made an application was insured as of that date. He also said he knew that the company, not the agents, issued the policies.

Plaintiff had received no instructions from the company as to when its policies were to take effect.

The court found that the company agreed to insure plaintiff and his family as of May 15, 1952; that plaintiff's son thereafter contracted polio and that plaintiff incurred expenses for the treatment of the son in the sum of $5,000; that plaintiff had performed all the conditions of the agreement and that plaintiff's failure to answer the key question on the application was an oversight and that defendant thereby suffered no prejudice because the answer would have been "no."

The application form, on its reverse side, stated: "Infantile Paralysis. Immediate First Day Coverage Automatically Covers Entire Family." "No Waiting Period." "Pays from First Day that poliomyelitis manifests itself and thereafter, as provided . . ."

Plaintiff contends that the application form itself was an offer to contract which was accepted by him; that the above mentioned wording on the back of the form caused him to believe that when he mailed the completed form and premium payment the contract was then in effect and that he was immediately covered.

Defendant contends that there was no representation that the policy would take effect as of the date of the application,

and that the application was an offer by the insured not accepted until policy issued. Defendant further contends that as the application states "Please issue to me your Special Polio (Infantile Paralysis) Insurance Policy *based upon the statements I am giving you herein*" (emphasis added) and the question concerning whether any member of the family had polio within the last 90 days was unanswered, there could be no contract. Inasmuch as the court found (and the finding is supported by the evidence) that the answer to the question would truthfully have been in the negative, the real question in the case becomes when, if the question had been so answered, the policy would take effect.

Plaintiff testified that on the date of the application he knew that a little girl living across the street from plaintiff's family had polio. When asked if that was not the reason for his signing the polio application he said, "Any time a person is in danger . . . I would have taken out insurance regardless, but that would prompt a person to take out insurance." We see no violation of plaintiff's duty as an agent of the company to call this fact to the company's attention, nor in plaintiff's failure to notify the company when his son first became ill, inasmuch as his condition was diagnosed as tonsillitis. If the policy took effect on completing the application, what happened to the son thereafter (the evidence showing he was hale and hearty on that day) could not affect the policy.

1. *Was There a Contract of Insurance?*

(a) Effect of the Application.

Whether a contract of insurance arose upon plaintiff's signing the application depends (a) upon whether the language of the application form constituted an offer by defendant to insure immediately upon its being signed and posted, and (b) if so, whether plaintiff met the terms of the offer.

In determining the effect of the language of the application form the established rules for the construction of insurance policies must be borne in mind.

"Because contracts of insurance are not the result of negotiation and are generally drawn by the insurer, any uncertainties or ambiguities therein are resolved most strongly in favor of the insured (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 P. 42, 26 A.L.R. 123]; 14 Cal.Jur. 443-445). Where there is no ambiguity, however, courts

will indulge in no forced construction against the insurer, and the insurance policy, like any other contract, is to be interpreted according to the intention of the parties as expressed in the instrument in the light of the circumstances surrounding its execution [citations]." (*Blackburn* v. *Home Life Ins. Co.*, 19 Cal.2d 226, 229 [120 P.2d 31].)

■ "Where two interpretations equally fair may be made, that which affords the greatest measure of protection to the assured will prevail." (*Fageol Truck & Coach Co.* v. *Pacific Indemnity Co.*, 18 Cal.2d 731, 747 [117 P.2d 661].)

■ Our first task is to determine, then, whether there is any uncertainty or ambiguity in the language of the application form. The face of the application form contains merely a request for the issuance of the "Special Polio Insurance Policy," data concerning the applicant and his family and the question mentioned above as being unanswered. The only language important here is that above quoted appearing on the reverse side: "*Immediate* First Day Coverage *Automatically* Covers Entire Family." (Emphasis added.) The use of the words "immediate" and "automatically" in these phrases is difficult to explain as having any meaning other than that the coverage commences from the date of the application. At least, a reasonable conclusion is, that did these phrases apply to the first day of sickness rather than the first day of coverage, there would be no need for the words "immediate" and "automatically." The policy when issued would state that it covered illness from the first day of illness and covered the entire family. The form further states: "Pays from First Day that poliomyelitis manifests itself. . . ." In view of that statement, what is the meaning of the words "immediate First Day Coverage" if not coverage immediately upon signing?

Under the rules above mentioned such words are fairly capable of an interpretation which would afford the greatest measure of protection to the insured. A layman could hardly be expected to give any other interpretation. It is at least a reasonable interpretation. ■ ". . . an application must be construed as it would be taken by the ordinary applicant. . . ." (*Ransom* v. *Penn Mutual Life Ins. Co.*, 43 Cal.2d 420, 424 [274 P.2d 633].) ■ We are therefore required to hold that the application form constituted an offer by defendant of coverage to take effect immediately upon the signing and posting of the application. There need not be a written policy. ■ "Where a valid parol contract of in-

surance has been entered into, the policy to be issued thereon is simply the memorial of the prior parol contract, and even though the policy be not delivered until after the loss occurs, the insurance is deemed effective from the time agreed upon in the parol agreement, irrespective of any delivery of the policy [citation]." (*Marderosian* v. *National Casualty Co.,* 96 Cal.App. 295, 303 [273 P. 1093].) In that case, the insurance circular stated concerning an insurance policy to be issued by a newspaper as a subscription premium, " 'Do not wait until the accident happens. Do it today! Avail yourself of the opportunity to protect yourself before and not after.' " (P. 299.) The court held that although the application for the policy provided that the policy to be issued would be effective at noon " 'of the day following the date' " (p. 301) the application was received by the newspaper, the policy actually took effect as soon as received by the newspaper. *Linnastruth* v. *Mutual Benefit etc. Assn.,* 22 Cal.2d 216 [137 P.2d 833], holding that coverage did not take effect until the policy was issued, is not in point for the reason that the application expressly stated " 'this application shall not be binding upon the Association until the policy is issued to me.' " (P. 217.) This brings us to the question

(b) Did Plaintiff Meet the Terms of the Offer?

He obviously did in all respects except that he did not answer the question as to whether there had been polio in the family in the preceding 90 days. The court found, and the evidence shows, that there had been none and hence the truthful answer, if given, would have been "no." Was the failure to answer fatal to the taking effect of the coverage? We do not think so. While ordinarily it is the law that to accept an offer and make a binding contract the offeree must comply with all the conditions of the offer, substantial compliance is all that is required. No one would suggest that defendant wanted just *any* answer to the medical history question as a prerequisite to creation of the contract. Instead, it obviously demanded that plaintiff and his family actually not have had polio within the designated period. Merely answering in the negative was not what defendant required in exchange for its promise to insure. Rather, the demand that there not have been polio was a prerequisite which, if the answer were false, would have avoided the contract. Whether plaintiff answered the question was unim-

portant. Whether polio had existed was the important thing. The contract arose on signing, but such contract was subject to avoidance if it developed that there had been polio in the designated period. That the failure to answer the question under the circumstances was not fatal to the taking effect of the contract is illustrated by analogy by the case of *Ransom* v. *Penn Mutual Life Ins. Co., supra,* 43 Cal.2d 420, where the applicant erroneously answered "no" to a medical question. As to that fact the court said (p. 427): "An incorrect answer on an insurance application does not give rise to the defense of fraud where the true facts, if known, would not have made the contract less desirable to the insurer." See also how "materiality" is to be determined. (Ins. Code, § 334.)

Morever, there is some indication that the company itself placed little importance on plaintiff's failure to answer the question. Plaintiff sent the application to the office of defendant's Pacific Coast manager in Pasadena, the person who appointed him agent and sent him his instructions and kit, and on May 23d the office manager wrote him thanking him for sending it to that office and informing him that she had forwarded it to defendant's "A. & H. Dept." at Monmouth, Illinois.* Presumably she examined the application, and if she did, must have noticed that the question was unanswered. It was received at Monmouth on May 23d. The check accompanying the application was cashed May 24th. Defendant did nothing about the omission until June 13th. In the meantime, and on May 28th, plaintiff wrote to defendant's head office at Chicago informing it that his son had contracted polio. On June 13th the manager of defendant's accident and health department wrote that the department was in the process of writing plaintiff when his letter of May 28th was referred to it, and stated, "Additional information was required for the reason that" the medical question had not been answered. On June 24th, defendant wrote plaintiff referring to the unanswered question and stating, "Of course we now know that an affirmative answer is the correct answer but we are wondering if we should proceed with the issuance of the policy to provide coverage for other members of the family," and yet the question

---

*Actually, the letter only refers to the application for insurance for one Otten which accompanied plaintiff's application. However, it is obvious that the office manager followed the same procedure as to both applications. Plaintiff's check accompanying covered both.

was not even then answered! In the case of the Hutchinson policy, the company dated that policy when issued back to the date of Hutchinson's application.

Under the circumstances of this case, the cashing of the check for the returned premium did not constitute an acknowledgment by plaintiff that no contract of insurance had been entered into nor did it bar him from bringing this action.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 16, 1956.