OPINION OF THE COURT
Hortense W. Gabel, J.
In plaintiff John Riordan’s motion for summary judgment, he seeks to recover the proceeds of an accident insurance policy issued by the defendant Mutual of Omaha Insurance Company (Mutual) for the death of his wife, Charlotte Riordan. The defendants cross-move for summary judgment.
The issue appears to be novel in this State: Is an advertised mail-order solicitation of travel accident insurance an offer to sell insurance which can be accepted by the mailed return of an enrollment application and a check?
In May, 1976, the decedent, Mrs. Riordan, received by mail, the New York Motorist, which is a monthly publication sent to members of the defendant, the Automobile Club of New York, Inc. (AAA). Mrs. Riordan was a regular AAA member and John Riordan was a sustaining member.
The periodical carried an advertisement for Mutual travel accident insurance limited to "Members of the Automobile Club of New York and their families”. The advertisement is annexed hereto and made a part of the opinion. In large black lettering across the top of the advertisement was the statement, "enroll now . . . and Take Along This '365’ Travel Accident Insurance Wherever You May Go — Across the Street, Across Town or Around the World ... for Business or for Pleasure!”
*640 The advertisement then stated that "Your Club membership automatically qualifies you to enroll”. Below that statement in black letters is printed the statement "Covers you for these types of travel accidents”. The advertisement goes on to describe the types of covered travel accidents including loss of life as a driver or passenger riding in a private passenger automobile.
Also specified were three plans, providing different benefits for the same injuries with the required premium for each plan.
Included in the advertisement was an enrollment form to be clipped out and sent to the defendant Club Agency, Inc. (Club). At the top of the enrollment form and in print substantially smaller than other parts of the advertisement appeared the following: "Please enroll me in the '365’ Travel Accident Insurance Program underwritten by Mutual of Omaha Insurance Company. I have enclosed the annual premium for the coverage checked and understand that protection becomes effective the date my Certificate of Insurance is issued.”
In late May, 1976, Mr. and Mrs. Riordan jointly filled out and signed the enrollment form. They included both of their membership numbers on the form, and chose the $100,000 family coverage plan. On June 1 or June 2, 1976, immediately prior to commencing an automobile trip to Florida, Mrs. Riordan made out a check for the required premium of $29 and on June 1 or June 2, Mr. Riotdan mailed the enrollment form and check to the defendant Club.
At approximately 10:30 a.m. on June 3, 1976, the Riordans were involved in an automobile accident in South Carolina. Mrs. Riordan died about an hour after the accident.
Club received the enrollment form and premium check on June 4, 1976. There was no investigation of the Riordans or an examination of their medical history (none was requested) nor was there any verification of their membership numbers nor was any other act of investigation, or judgment performed.
The forms were merely checked to verify that the proper premium had been enclosed for the requested plan and that it contained an AAA membership number.
On June 4, 1976, a certificate of insurance denominated "365 Travel Accident Insurance, '365’ around the world around the clock”, was mailed to plaintiff by the Club. The terms of coverage contained in the certificate of insurance *641 mailed to the plaintiff provided that: "The initial term of this certificate begins on the Certificate Date at 12:01 a.m., Standard Time of the place where the insured resides, and ends at 12:01 a.m., the same standard time, on the renewal date. Each time this certificate is renewed, the renewal term begins at the same time the preceding term ends at 12:01 a.m., the same standard time, on the date the next renewal premium becomes due.”
In late June, the plaintiff received the certificate and submitted his claim.
The defendants deny liability, arguing that the submission of the enrollment form was not an acceptance of an offer but merely a proposal to contract for insurance which could only be accepted or "issued” by Mutual while Mrs. Riordan was alive so as to permit a "meeting of the minds”.
The plaintiff urges that the New York Motorist advertisement to AAA members was misleading and created a reasonable expectation that the mailing of the enrollment form with a check and AAA number would provide readers, including Mr. and Mrs. Riordan, with a contract of insurance. In other words, plaintiff claims that the advertisement constituted an offer by the defendant, which Mr. and Mrs. Riordan accepted when they mailed the enrollment form and Mrs. Riordan’s check.
While there are no New York cases involving mail-order insurance, New York, in Lachs v Fidelity & Cas. Co. of N. Y. (306 NY 357) has applied the reasonable expectation doctrine in a somewhat analogous situation, involving impersonal, machine-solicited and dispensed flight insurance. Lachs involved insurance purchased from a machine located directly in front of a "nonscheduled” airline’s counter. Language in the policy and on the machine itself restricted coverage to "scheduled” airlines. Nonetheless, the court held in favor of the beneficiaries of a decedent policyholder who flew on a "nonscheduled” airline.
The court used the expectations of a reasonable man as the standard governing the contract’s interpretation. The physical location and appearance of the machines to the potential insurance purchaser, which created the impression that the policy was applicable to nonscheduled airlines, was given considerable attention. The Court of Appeals required insurance companies operating in this manner to assume greater care in accurately describing their policies to purchasers. *642 The leading case of Klos v Mobil Oil Co. (55 NJ 117) involved mail-order solicitation of insurance through a brochure which contained an application form soliciting the decedent, as a Mobil credit card holder, to purchase accident insurance. In the New Jersey case, the Supreme Court noted the complete explanation of the coverage in the brochure, the emphasis on quick action by the individual, the absence of a physical examination requirement, and the limited underwriting procedures undertaken by the company. These factors convinced the court that the brochure and application were a complete offer and that deposit of the completed application into the mail constituted acceptance of the offer under the terms specified in the application. The New Jersey court (p 123) stated: "When Klos mailed in his completed application, he accepted American’s offer and a contract for insurance was consummated with all of the essential elements agreed upon.”
Thus, the Klos court used the layman’s reasonable expectations of coverage as the standard by which to determine whether a mail-order policy was in effect.
Fritz v Old Amer. Ins. Co. 354 F Supp 514) also involved mail solicitation of accident insurance. In that case, the court (p 518) stated: "when the potential insurance purchaser cannot consult with an agent to ascertain the parameters of the proposed policy, the concept of an informed meeting of the minds is a myth unless the insurance company clearly and explicitly explains the policy in its literature. To effectuate this goal, the reasonable expectations which such literature raises or does not rebut must govern the interpretations of such policies.”
Applying the reasonable expectations standard in this case, the plaintiff must prevail. Since the advertisement was misleading, he and his wife could reasonably assume that if the enrollment forms were correctly filled out and mailed, they would be covered by the insurance as advertised.
As in Fritz, the specifics of the policy were predetermined and leave nothing open for negotiation. Defendant’s underwriting procedure rendered rejection of an applicant only a remote possibility. The insurance company did not occupy its dual role of offeree, seriously considering the applicant’s offer. Instead, defendants were the offeror and the brochure and application comprise the offer to contract.
The plaintiff and his wife successfully completed these steps and upon completion the contract became effective.
*643 Having found that plaintiff is covered, the next issue to be determined is the amount he can recover under the policy.
The insurance certificate designated John Riordan as the insured. Under the coverage provided, the benefits payable to his beneficiary on his death would be $50,000 whereas coverage for Charlotte Riordan, the "dependent spouse” would be $25,000.
The enrollment form submitted by the Riordans reads "Both John Riordan and Charlotte Riordan”. Immediately following the names are two numbers, written one above the other. The number applicable to a sustaining member appears above the number denoting a regular number. John Riordan’s signature appears first followed by that of his wife.
The advertisement does not advise a prospective enrollee whether there is a choice as to who may be the primary insured. Furthermore, the plans offered denote family coverage for "member and spouse” and not for member and sustaining member.
Pursuant to the usual procedure followed by the defendant Club, as elicited at an examination before trial, the regular member was always named the primary insured and if an enrollment form was received with two names on it, a telephone call would be made by Club to the AAA to determine who was the regular member and who was the sustaining member.
Since the defendant Club had its own custom and policy of designating the regular member as the primary insured, it could not abrogate that procedure by claiming that it believed that John Riordan was the regular member, since a simple telephone check to the AAA would have disclosed the Riordans’ correct status. The defendants are bound by their custom of certifying the regular member, in this case, Mrs. Riordan, as the primary insured. They may not disavow their procedure to limit their liability. (Cf. Hollywood Plays v Columbia Pictures Corp., 77 NYS2d 568, affd 274 App Div 912.)
As to the remaining issue raised by the defendants, the cause of death of Mrs. Riordan, the defendants have offered no proof to sustain their burden of establishing that her death occurred in a manner other than by her physical injuries sustained in the automobile accident. (Cohen v National Cas. Co., 275 App Div 1062.)
*644 The defendants contend that they intend to cross-examine the plaintiff as to his knowledge of any pre-existing condition his wife may have had which might have caused her death and for that reason summary judgment to plaintiff should be denied. Since plaintiff has been examined before trial, the plaintiff’s motion cannot be denied on the ground that there remain facts entirely within plaintiff’s knowledge (Golini v Nachtigall, 38 NY2d 745; 4 Weinstein-Korn-Miller, NY Civ Prac, par 3212.18). In any event, the death certificate lists the cause of death as "crushing injury on chest” and "circulation collapse”.
Accordingly, plaintiff’s motion is granted against the defendant Mutual in the amount of $50,000 and is otherwise denied. The cross motion is granted only to the extent of dismissing the complaint against defendants Club and AAA. Club was the agent for a disclosed principal and therefore the liability is that of the insurer, Mutual, and not the agent. (Gibbs v Home Ins. Co., N. Y., 252 App Div 805.) No cause of action exists against AAA since it was not an insurer and merely provided the eligibility requirements for the Riordans to obtain insurance.

*645