ROYCE L. MARTIN, Plaintiff-Appellant, v. GOVERNMENT EMPLOYEES INSURANCE COMPANY, a/k/a GEICO, Defendant-Appellee.

First District (4th Division)   No. 1—89—2714

Opinion filed December 6, 1990.

Janet F. Gerski, of Chicago, for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, Michael A. Clarke, and Robert J. Franco, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Royce L. Martin, brought an action for breach of insur-

ance contract against defendant, Government Employees Insurance Company (GEICO). Martin seeks damages arising out of GEICO's refusal to honor his claim for loss of his automobile, which was stolen shortly after Martin sent in his application for insurance to GEICO. The trial court dismissed Martin's complaint for failure to state a cause of action on the grounds that there was no contract of insurance at the time of the theft.

Martin appeals, contending that his second amended complaint states a breach of contract action under one of two alternative theories of contract formation: (1) GEICO's solicitation form and quote sheet/application contained ambiguous language that must be construed as extending an offer of insurance to Martin, which Martin accepted when he completed the application and placed it in the mail with his premium; or (2) assuming that Martin's application for insurance is viewed as his offer to purchase insurance, GEICO actually or constructively accepted the offer before the theft of Martin's automobile.

Because we find that, under either theory, no contract came into existence, we affirm the trial court's dismissal of this action.

BACKGROUND

Martin works for the United States Postal Office. GEICO conducts a mail-order automobile insurance business nationally. In its literature, the company states that it "thinks federal employees deserve special service and savings on their insurance."

In March 1986, Martin's existing insurance coverage for his 1985 Pontiac Firebird was due to expire. Before that date, Martin obtained a form in the post office. This form gave him the opportunity to obtain a free quotation from GEICO as to the rates available for auto insurance, based on the information solicited in the form. This solicitation for quote requested such information as the potential insured's occupation; social security number; name of current insurance company and date current insurance expired; driver's license suspension or revocation information, including any convictions for driving under the influence of drugs or alcohol; history of accidents or traffic violations; each additional driver's name, birth date, gender, and marital status; occupation; years driving; driver training; and the driver's percentage of use of each automobile insured. In addition, the solicitation form requested information on each automobile to be insured, including year, make, model, body type, number of cylinders, total mileage, annual mileage, number of days used in travel to school or work, distance travelled, and use of automobile in employment.

GEICO's form encouraged interested persons to "take a few minutes right now to complete and return the postage-paid FREE QUOTATION REQUEST. If you qualify, you'll know in just a few days how much GEICO might save you." The form further noted that if a potential insured did not meet GEICO's underwriting requirements, he or she "may still obtain the same quality auto coverage and service from one of [GEICO's] affiliates, at somewhat higher rates and for a 6-month policy term."

Martin completed the form and returned it to GEICO, which in turn sent him a "personal quote sheet," an application for insurance, a cover letter, and step-by-step instructions for completing the "application process." According to Martin, when he received the quote sheet/application from GEICO (instead of an affiliate), he assumed that he had met GEICO's underwriting requirements and did not seek replacement insurance elsewhere.

The cover letter that came with the quote sheet and application was headed "It's Easy to Do Business With GEICO" and set out "5 Easy Steps" to follow in returning the quote/application. The application required some additional information from Martin, but many of the questions were ones that had been answered previously in the solicitation for quote. At least one additional question was new, however: whether the applicant had any physical impairments. Martin answered that he is deaf.

The application form also contained certain representations, the legal significance of which are in issue. In essence, Martin construed GEICO's package of solicited information, quote sheet/application, and cover letter as extending an offer of insurance which he accepted when he completed the application and mailed it in with his premium payment. GEICO counters that it expressly reserved the right to approve the application and notify the applicant before an actual contract to insure came into being. GEICO further maintains that, under Illinois law, an insurance application is not the insurer's offer to insure but instead is the applicant's offer to purchase insurance.

Martin sent in his application and check on March 14, 1986. On March 27, 1986, his automobile was stolen. He reported the loss to GEICO the same day, by telephone. By a "GEICO CLAIM-GRAM" dated April 3, 1986, Martin received GEICO's request for his policy number in order to process the claim. At about the same time, GEICO returned Martin's application and check. The check had been stamped for deposit only but had not been cashed. A policy control number sticker had been torn off the face of the check. An accompanying memorandum, dated April 2, 1986, stated that GEICO could

not consider his memorandum until he completed answers to certain questions. The requested information, however, already had been furnished or did not apply. Martin returned the application and check to GEICO. Shortly thereafter, his check and application were returned, with no explanation. After his vandalized automobile was recovered, Martin again demanded adjustment of his claim and again tendered his premium payment. By letter dated June 19, 1986, however, GEICO denied liability and refused to pay on the ground that the application had not been completed and had not been approved.

GEICO successfully moved to dismiss Martin's original and amended complaints, on the ground that the pleadings failed to state a cause of action for breach of contract.

OPINION

■ The sole question we must resolve is whether GEICO and Martin had entered into a contract of insurance at the time Martin reported his loss of the automobile. Accordingly, we must look to the elements of contract formation rather than to general principles of contract construction. Contract formation issues turn on the elements of offer, a strictly conforming acceptance of the offer, and supporting consideration. *E.g., City of Burbank v. Illinois State Labor Relations Board* (1989), 185 Ill. App. 3d 997, 1002-03, 541 N.E.2d 1259.

■ Under Martin's primary theory of recovery, a contract of insurance was formed when Martin mailed in his completed application and check to GEICO, thereby "accepting" GEICO's "offer" to insure him. Martin concedes that applications for insurance generally are viewed as the *applicant's* offer to purchase insurance, which the *company* must accept (after evaluating the underwriting risk) before a binding contract is formed. Nevertheless, Martin points to alleged ambiguities in the GEICO offering materials, which led him to reasonably believe that GEICO's insurance coverage would become effective upon his completion of the application process.

■ Acknowledging that his theory is one of first impression for Illinois courts, Martin cites cases from other jurisdictions to support his argument. According to him, those cases provide persuasive reasoning for holding that when GEICO disseminated ambiguous information in the course of its mail-order solicitations, Martin's responding application and premium check completed the formation of the insurance contract.

Martin relies primarily on four cases: *Klos v. Mobile Oil* (1969), 55 N.J. 117, 259 A.2d 889; *Metts v. Central Standard Life Insurance Co.* (1956), 142 Cal. App. 2d 445, 298 P.2d 621; *Fritz v. Old American In-*

*surance Co.* (S.D. Tex. 1973), 354 F. Supp. 514; *Riordan v. Automobile Club of New York, Inc.* (1979), 100 Misc. 2d 638, 422 N.Y.S.2d 811. In these cases, the courts found that the insurers were contractually bound to pay the claims presented because they had accepted the underwriting risks at the time of the occurrences; they simply desired to avoid payment on the grounds that the policies in issue had not become effective at the time the insurable event occurred.

In *Klos*, an accident insurance company solicited Mobil gas card holders through the mail, sending these prospective insureds a letter, brochure, and application form that urged them to take advantage of the insurance being offered. By completing the application and returning it to the company, the card holder would receive the insurance; the premium automatically would be debited to his account. The plaintiff in *Klos* completed and mailed in his application and actually received the insurance policy. A few days later, he was fatally injured. His wife sued the company after it denied her claim based on its determination that coverage had not taken effect under the policy at the time of the death. The question presented was not *whether* the parties had entered a valid contract of insurance, but rather, *when* the contract should be given effect. Despite conflicting language in the insurer's materials as to the date coverage would begin, the court determined that the applicant's reasonable expectations of coverage should be given effect. Significantly, the insured had received the policy after completing the application, leading the court to remark, "[A]n applicant who actually had the policy in his possession surely would be mystified to learn that for no apparent reason he was not covered until some future date." 55 N.J. at 126, 259 A.2d at 894.

In considering the *Klos* decision, an Illinois court has commented that if a prospective insured becomes eligible for insurance by his membership in a class of credit card holders, "and the insuror does not retain the customary option or discretion to accept or reject an application pursuant to underwriting considerations," the brochure and application may constitute a contract, "at least for some purposes." (*Fuller v. Standard Oil Co.* (1971), 1 Ill. App. 3d 799, 802, 274 N.E.2d 865, 867.) Unlike the situation in *Klos*, however, GEICO did not offer "automatic" insurance based on membership in a class of customers. Nor did it propose to issue insurance regardless of underwriting considerations. On the contrary, GEICO reserved the express right to review and approve the application materials before extending coverage.

Unlike the facts in *Klos*, moreover, the GEICO materials were not ambiguous as to when coverage would commence. The last of the "5

Easy Steps" in GEICO's instructions notified the potential insured that when he completed, signed, and returned the application with the payment, he was *requesting* that the company issue a policy; that *"provided"* his application was approved, he could choose to have his policy go into effect "immediately *upon approval* by the Company; or on a date to be selected by the insured "but not before the *approval date."* A final exhortation stated *"Coverage cannot be issued unless your application is approved by the Company. When your application receives final approval, you will be informed by return mail."* (Emphasis added.)

In *Fritz v. Old American Insurance Co.* (S.D. Tex. 1973), 354 F. Supp. 514, the court found the *Klos* rationale persuasive in construing the effective date of an accident insurance policy. There, the insurer's application form requested none of the traditional underwriting information, asking only for the applicant's date of birth, his signature, and the beneficiary's name and relationship to the applicant. A day or two after mailing in the application, the prospective insured was killed in an automobile accident. Thereafter, his wife submitted a claim, which the insurance company denied on the basis that the policy had not taken effect because the insurance company had not approved the application at the time of the accident.

The *Fritz* court found coverage to be effective as of the date on which the prospective insured mailed his completed application form to the company, along with the premium check. In so holding, the Federal district court recognized that Texas law appeared to support the insurer's position, since general insurance principles adopted in Texas did not consider the application form as the insurer's offer to provide insurance. In fact the court acknowledged that a completed application must be "unconditionally accepted" by the insurance company before a binding contract is made. The insurer also pointed to language in its solicitation materials that indicated the policy would be effective "when issued," which would be "just as soon as the application is approved." The Federal court was not persuaded by the insurer's position, however, because there was other language in the company's solicitation materials that strongly suggested that coverage would take effect immediately upon application. In finding for the claimant, the court admitted that it was heavily influenced by the defendant insurer's use of the mails. The court was of the opinion that traditional contract theory was inapplicable to "this type of insurance marketing." 354 F. Supp. at 518.

We do not believe that the GEICO materials, by their express language, can be construed as giving rise to an offer that could be ac-

cepted by merely submitting the application and check. Nor do we find there to be an ambiguity on the issue of when coverage could be expected to begin. The GEICO representations, in our opinion, unequivocally put the applicant on notice that the application form was not to be considered an offer from GEICO, but rather a "request" for coverage, which would not be granted before GEICO's approval of the application. Exhortations to "act today" and "join the GEICO family of 'good drivers' " do not, in our opinion, lead a reasonable applicant to believe his coverage begins upon mailing in the application when the same materials expressly condition coverage on approval of the application. If a policy had issued in the pending case, as was the situation in *Klos*, we could find that such issuance equated with approval. Likewise, if the GEICO materials included a strong suggestion that mailing in the form caused immediate or automatic coverage, we might determine that the approval language was surplusage and follow the lead of *Fritz* or the *Riordan* case.

In *Riordan v. Automobile Club of New York, Inc.* (1979), 100 Misc. 2d 638, 422 N.Y.S.2d 811, the insurance company's advertisement in an auto club magazine contained an "enrollment form." The advertisement stated that "club membership automatically qualifie[d]" the insured to enroll and upon doing so, the individual could take the travel accident insurance wherever he or she went. The prospective insureds mailed in the completed enrollment form and premium payment a day or two before the wife was killed in an accident while traveling. The insurer received the application and check the following day and mailed a certificate of insurance, before discovering that the insured had died. The company subsequently denied coverage on the grounds that the certificate had not issued at the time of the death. The court nevertheless found that coverage existed, citing *Klos* and *Fritz* and holding that language in the advertisement soliciting the application led the applicant to assume that coverage would begin upon mailing the completed form and premium payment.

In *Metts v. Central Standard Life Insurance Co. of Illinois* (1956), 142 Cal. App. 2d 445, 298 P. 2d 621, the plaintiff had submitted an application and check to obtain polio insurance for his family. Within days, plaintiff discovered that his son had contracted polio. The insurance company denied the subsequent claim by returning the application and premium payment. In holding in favor of the applicant, the court noted that the application form stated that "Immediate First Day Coverage Automatically Covers Entire Family" and further represented that the coverage "Pays from FIRST DAY that poliomyelitis manifests itself." (142 Cal. App. 2d at 448, 298 P.2d at

624.) The California court held that the application constituted an offer by the insurer to extend coverage, effective immediately when the offeree signed and returned the application.

*Metts* provides no more support for Martin's position than the other three cases discussed above. The representation of "immediate," first-day coverage was viewed as part of an offer from the insurance company, which was accepted upon the prospective insured's mailing of the application and premium. Notably, the insurer's practice was to date the policy when issued as of the date of the application. It does not appear, moreover, that the *Metts* court was construing any ambiguous language in the application because the express representation as to immediate coverage for polio was unrebutted. Since the plaintiff had no knowledge of his son's polio at the time he submitted the application and check, there was no defense to coverage. The court quoted general principles of construction, stating, "Where there is no ambiguity *** courts will indulge in no forced construction against the insurer, and the insurance policy, like any other contract, is to be interpreted according to the intention of the parties as expressed in the instrument in the light of the circumstances surrounding its execution." *Metts*, 142 Cal. App. 2d at 449-50, 298 P.2d at 624.

In the pending case, GEICO's representations were materially different from those in *Metts* (and the other cases). In our opinion, there was no representation of immediate coverage, express or implied. Unfortunately, for Martin, he did not request and GEICO did not supply a binder or conditional receipt keyed to the date that Martin's existing coverage was to expire. Had such a procedure been followed, Martin presumably would state an actionable breach of contract theory, even with the "approval" language appearing in the GEICO materials, because the granting of a binder or conditional receipt would have indicated GEICO's acceptance of the underwriting risk based upon the solicitation for quotation.

Like Martin, we suspect that GEICO most likely would have accepted Martin's application and would have provided coverage if the theft of the car had not occurred when it did. From a business or public relations standpoint, GEICO's position appears questionable, particularly in light of its attempt to attract government employees. We further acknowledge that our decision appears harsh in light of Martin's situation. We certainly sympathize with Martin, who did what he could to obtain replacement insurance coverage in a timely fashion. We cannot ignore GEICO's reservation of the right to approve the application, however, without doing serious damage to the common law

of contract. In our view, GEICO'S *right to approve* the application equates with the *acceptance of the prospective insured's offer*.[1]

██ In that regard, Martin alternatively contends that GEICO *did* accept his application. This theory requires us to find that GEICO accepted the application "constructively," once Martin mailed in the application and check because there was nothing left for GEICO to do at that point except for the purely mechanical or administrative act of processing the form and then sending notice to Martin. In support he cites the fact that GEICO had stamped his check for deposit and affixed a policy control number on the face of it. While these facts do suggest that GEICO was processing Martin's application, such internal practices do not equate with an objective manifestation to Martin that GEICO had actually accepted his offer. Objective manifestation is the "essence of a valid acceptance." (*Rothenbuecher v. Tockstein* (1980), 88 Ill. App. 3d 968, 970, 411 N.E.2d 92, 94; see also *Rosin v. First Bank* (1984), 126 Ill. App. 3d 230, 466 N.E.2d 1245 (although an acceptance may be implied under certain circumstances, generally silence cannot be relied upon to establish acceptance of an offer).) If GEICO had expressed some indication of its acceptance to Martin, our disposition of this case may well have been different. Certainly, if an agent of GEICO had made oral representations that Martin was covered upon mailing in the application, or if GEICO had notified Martin of its approval of the application before or even after the theft of the car, we could find that a contract of insurance was in existence.

There is nothing in the record to suggest that GEICO waived its right to approve the application or that GEICO considered its right to approve as a technicality. Martin's reliance on *Armstrong v. United Insurance Co. of America* (1981), 98 Ill. App. 3d 1132, 424 N.E.2d 1216, does not aid his position because there the insurance company's assertion of a right to approve applications was shown to be a sham under the circumstances. In *Armstrong*, the insurance agent repeat-

---

[1]This position is consistent with Illinois cases that adhere to the general rule that an application for insurance is the applicant's offer directed to the insurance company, not the other way around. (*Talbot v. Country Life Insurance Co.* (1973), 8 Ill. App. 3d 1062, 291 N.E.2d 830.) The insurance company normally assesses the underwriting risk from the application and therefore the insurance carrier must accept the applicant's offer before a contract is formed. (See *Carroll v. Preferred Risk Insurance Co.* (1966), 34 Ill. 2d 310, 215 N.E.2d 801.) GEICO's express reservation of final approval is thus consistent with the purpose of the general rule, *i.e*, to afford the insurer the opportunity to evaluate the risk and approve the application before becoming bound. We do not believe that the use of mail order marketing techniques necessarily changes the purpose of the rule, although it may under circumstances like those in *Klos* and similar cases.

edly assured the plaintiff that he would be covered upon tender of the premium with the completed application. Furthermore, the company fostered a policy of telling applicants they were covered from the moment of first payment. The company subsequently denied plaintiff's claim on the basis that no contract of insurance had come into effect because its "conditional receipt" of the application contained a provision that the application was subject to the company's approval, which had not been formally given at the time of the insured's death. In finding that the insurance company was in fact bound notwithstanding the disclaimer, the court held that the company was bound by its agents' representations.

*Armstrong* can be read as prohibiting an insurer from denying coverage based on a general "final approval" term while at the same time inducing applicants to sign up based in part on the representation that coverage is effective upon tender of payment with the completed application. This actual practice of the company flatly contradicted its stated intention to reserve a right of "final approval" of applications. Moreover, the insured had received a conditional receipt, which strongly implies that the underwriting risk was accepted at the time of the application.

Martin essentially asks this court to assume that GEICO's underwriting was complete after it reviewed the solicitation for quote and sent him a personal quote sheet/application form. As we have noted, the application form did request additional information, although there was substantial duplication as well. The additional questions contained in the form may or may not have borne directly upon the decision to underwrite, but we are not justified in setting aside GEICO's explicit, unambiguous statement that it would not extend coverage before approval of the application. To do so we would necessarily conclude that reservation of such approval was so mechanical a device as to be mere surplusage. On the contrary, we believe GEICO took care to draft its materials in such a way as to prevent an applicant from assuming that by mailing in the form and check he would create a binding contract for immediate coverage.

Had the GEICO materials remained silent on the issue of reserving approval, or had the timing of coverage been left completely open, we may have found it reasonable to assume that the contract was created when Martin completed the application process. In such a situation Martin's reasonable expectations of immediate coverage would be fulfilled because there would be nothing in the materials to indicate that any further consideration of the application would be necessary. Hence, the effective date of coverage under the contract would also

equate with the date the application was mailed. Contract theory would support such a result because of the common law "mailbox" rule, which recognizes that the mailed acceptance of an offer is effective when mailed, not when received or acknowledged.

Despite our misgivings about the impact of our decision on Martin, whose counsel made an admirable effort to fit within the Klos line of cases, we hold that the parties in this case had no enforceable contract of insurance on the date that Martin's automobile was stolen. We therefore must affirm the trial court.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.