WILLIAM FAULKNER *et al.*, Plaintiffs-Appellants, v. WILLIAM GILMORE *et al.*, Defendants-Appellees (United States Fidelity and Guaranty Company, Defendant).

Third District   No. 3—92—0720

Opinion filed July 27, 1993.—Rehearing denied September 22, 1993.

BARRY, J., dissenting.

Reno, O'Byrne & Kepley, P.C., of Champaign (Michael J. Zopf, of counsel), for appellants.

Willis R. Tribler, of Tribler & Orpett, P.C., of Chicago (Steven R. Mc-Mannon, of counsel), for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiffs, William Faulkner, Janice Faulkner, and Kankakee Mechanical Systems, Inc., brought a four-count, third-amended complaint against defendants William Gilmore and Deuschle-Gilmore Insurance Agency, Inc., alleging that the defendants breached a fiduciary duty and a contract to terminate a surety agreement. The trial court dismissed the complaint for failure to state a cause of action. The plaintiffs appeal. We affirm.

Counts I and II of the plaintiffs' third-amended complaint alleged that the defendants breached a fiduciary duty in failing to provide insurance-related services. Counts III and IV alleged that the defendants breached a contract to terminate a surety agreement for bond indemnification. All four counts of the complaint alleged essentially the same factual scenario. In 1980 or 1981 the plaintiffs initially contacted defendant Gilmore, an insurance broker, to procure a bond indemnification agreement for the plaintiffs. On September 9, 1982, Gilmore procured a bond indemnification agreement for the plaintiffs entitled "Master Surety Agreement." The agreement was between United States Fidelity and Guaranty Company (USF&G) and seven other individuals or entities, which included the plaintiffs and the plaintiffs' business associates in the construction industry. The plaintiffs' business associates who were parties to that agreement included Kanka-

kee Piping Systems, Inc. (Kankakee Piping), MCM Insulation, Mark Webb, and Kathleen Webb. The agreement contained the warning: "CAUTION! READ BEFORE SIGNING." The plaintiffs signed the agreement. The agreement provided that only the parties could terminate it and then only upon 30 days written notice. It further provided that the parties would not be relieved of liability for any bond executed prior to the expiration of the 30-day notice period.

After executing the agreement, the plaintiffs and the rest of the construction-industry parties to the agreement were involved in various construction projects. At some point, the plaintiffs terminated their business association with those parties. The complaint stated that the plaintiffs told defendant Gilmore on April 13, 1984, that they "had terminated their business association with Kankakee Piping ***, MCM Insulation, Inc., Mark Webb, and Kathleen Webb." According to the complaint, the plaintiffs then asked Gilmore about the necessary steps to procure *future* bonding and bond indemnification solely for the plaintiffs. Gilmore immediately contacted USF&G about future bonding and bond indemnification for the plaintiffs. However, he did not terminate or advise the plaintiffs to terminate the previous agreement.

The complaint further alleged that more than 30 days after the parties' April 13 meeting, Kankakee Piping procured bonds through USF&G pursuant to the "Master Surety Agreement." The complaint did not specify the particular construction project for which those bonds were issued. Instead, the complaint merely alleged that sometime after the April 13 meeting, Kankakee Piping filed bankruptcy and defaulted on certain contracts which were guaranteed by performance bonds issued by USF&G and indemnified by the plaintiffs. The complaint also alleged that the plaintiffs were compelled to complete the Manteno Hospital contract on which Kankakee Piping had defaulted. The complaint, however, did not allege that the Manteno Hospital contract or any other contract that Kankakee Piping defaulted on was secured by the same bonds that were issued more than 30 days after the April 13 meeting.

The trial court dismissed the complaint for failure to state a cause of action. In so doing, it noted that the complaint was defective because it did not allege that the plaintiffs' damages were incurred in connection with a default on a bond issued under the agreement more than 30 days after the April 13 meeting. Regarding counts I and II, the court found that the plaintiffs failed to allege facts showing that the defendants had a duty to terminate the original "Master Surety Agreement." Regarding counts III and IV, the court found that the

complaint did not allege facts showing consideration necessary for a valid contract.

On appeal, the plaintiffs first argue that the trial court erred in dismissing their claims relating to an alleged breach of a fiduciary duty. Specifically, they contend that the defendants had a duty to advise them to terminate the "Master Surety Agreement." In support of their position, the plaintiffs rely on *Lake County Grading Co. of Libertyville, Inc. v. Great Lakes Agency, Inc.* (1992), 226 Ill. App. 3d 697, 589 N.E.2d 1128, and *Economy Fire & Casualty Co. v. Bassett* (1988), 170 Ill. App. 3d 765, 525 N.E.2d 539.

In reviewing the propriety of a dismissal for failure to state a cause of action, we must determine whether the complaint, when viewed in the light most favorable to the plaintiff, alleges sufficient facts to establish a cause of action upon which relief can be granted. (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 566 N.E.2d 1365.) A cause of action will not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 499 N.E.2d 1319.) However, if the complaint does not state a cause of action, that deficiency may not be cured by liberal construction or argument. (*Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 527 N.E.2d 303.) The decision of whether to grant a motion to dismiss is within the sound discretion of the trial court. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.

We note that Illinois law places a particular burden on an insurance broker to exercise competence and skill when he renders the service of procuring insurance. (*Economy Fire & Casualty Co. v. Bassett* (1988), 170 Ill. App. 3d 765, 525 N.E.2d 539.) The relationship of an insurance broker and the proposed insured is a fiduciary one. (*Lake County Grading Co. of Libertyville, Inc. v. Great Lakes Agency, Inc.* (1992), 226 Ill. App. 3d 697, 589 N.E.2d 1128.) Accordingly, an insurance broker is bound to exercise reasonable skill and diligence in the transaction of the business entrusted to him and will be responsible to his principal for any loss resulting from his failure to do so. (*Economy Fire & Casualty Co. v. Bassett* (1988), 170 Ill. App. 3d 765, 525 N.E.2d 539; *Pittway Corp. v. American Motorists Insurance Co.* (1977), 56 Ill. App. 3d 338, 370 N.E.2d 1271.) However, a broker is not liable if he acts in good faith and with reasonable care, skill, and diligence to place the insurance in compliance with his principal's instructions. (*Economy Fire & Casualty Co. v. Bassett* (1988), 170 Ill. App. 3d 765, 525 N.E.2d 539.) Moreover, a broker's employment in

each case is that of a special agent for a single objective. (*American Environmental, Inc. v. 3-J Co.* (1991), 222 Ill. App. 3d 242, 583 N.E.2d 649.) Once the limited purpose of the broker's agency is accomplished, the broker no longer owes an ongoing fiduciary duty to the ex-principal. *American Environmental, Inc. v. 3-J Co.* (1991), 222 Ill. App. 3d 242, 583 N.E.2d 649.

■ In the instant case, we find that the trial court properly found that the plaintiffs' complaint failed to state a cause of action for a breach of a fiduciary duty. The cases relied on by the plaintiffs are distinguishable. Those cases involve the duties of a broker to procure insurance in a timely manner (see *Lake County Grading Co. of Libertyville, Inc. v. Great Lakes Agency, Inc.* (1992), 226 Ill. App. 3d 697, 589 N.E.2d 1128) and to procure insurance in accordance with the client's special circumstances after being informed about the client's needs (see *Economy Fire & Casualty Co. v. Bassett* (1988), 170 Ill. App. 3d 765, 525 N.E.2d 539). Here, the plaintiffs' complaint alleged that the plaintiffs informed the broker that they had already terminated their business relationship with the other entities that were parties to the "Master Surety Agreement." The complaint did not allege that they requested the broker to take any steps to terminate the business relationship between the plaintiffs and the other parties to the agreement. Rather, the complaint alleged only that they sought *future* bonding for their company. In that regard, the complaint shows that the defendant broker took immediate action in furtherance of that request. Under these circumstances, we find that the complaint shows that the defendants acted in good faith and with reasonable diligence to obtain insurance in accordance with the plaintiffs' instructions. Accordingly, we find that the trial court did not abuse its discretion in dismissing counts I and II of the plaintiffs' complaint.

As an additional matter, we note that the plaintiffs' complaint is also defective because it fails to allege that the project on which Kankakee Piping defaulted was guaranteed by bonds issued under the "Master Surety Agreement" more than 30 days after the April 13 meeting between the plaintiffs and the defendant broker. Assuming *arguendo* that the defendants owed the plaintiffs a fiduciary duty to advise them to terminate the agreement, we note that it was undisputed that the defendants would only be liable for a default on bonds issued more than 30 days after notice of termination of the agreement. A careful reading of the plaintiffs' third-amended complaint clearly shows that the plaintiffs failed to allege that their damages arose from a default on a bond issued after that key date.

The plaintiffs next argue that the trial court erred in dismissing counts III and IV of their complaint, which alleged that the defendants breached a contract.

■ We disagree. Again we note that the plaintiffs failed to allege a causal connection between their damages and the defendants' conduct, since they did not allege that Kankakee Piping defaulted on a contract that was guaranteed by a bond issued more than 30 days after the April 13 meeting. Furthermore, we note that to establish a valid contract, there must be an offer, a strictly conforming acceptance of the offer, and supporting consideration. (*Martin v. Government Employees Insurance Co.* (1990), 206 Ill. App. 3d 1031, 565 N.E.2d 197; *McKee v. First National Bank* (1991), 220 Ill. App. 3d 976, 581 N.E.2d 340.) In the instant case, the plaintiffs' complaint merely alleged that the plaintiffs asked the defendants about acquiring future bonding and bond indemnification. We find nothing in the complaint indicating that the defendants agreed to terminate the "Master Surety Agreement" or that they were even asked to do so. Since there was not an offer and acceptance, we find that the trial court properly dismissed counts III and IV of the plaintiffs' complaint.

For the foregoing reasons, the judgment of the circuit court of Kankakee County is affirmed.

Affirmed.

STOUDER, J., concurs.

JUSTICE BARRY, dissenting:
I respectfully dissent.

We are to consider, as a matter of law, whether the trial court was correct in granting the defendant's motion to dismiss. The proper and controlling standard we must follow on review is the standard rather recently recited by Justice Stamos, "A trial court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to recover. [Citations.] *** All well-pleaded facts in the attacked portions of the complaint are to be taken as true [citation] and a reviewing court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted." (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504, 565 N.E.2d 654, 657.) In 1991 Justice Clark said, "and all reasonable inferences therefrom [well-pleaded facts] should be construed in plain-

tiffs' favor." *(Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 542, 582 N.E.2d 108, 111.) Most recently Justice Bilandic repeated the standard in *Dix Mutual Insurance Co. v. LaFramboise* (1992), 149 Ill. 2d 314, 318, 597 N.E.2d 622, 624.

I would find that the trial court erred and abused its discretion in granting the motion to dismiss. I find that there were sufficient well-pleaded allegations to withstand the motion even without considering reasonable inferences that may be drawn.

Here the plaintiff filed a 28-page complaint which included allegations that defendant Gilmore as a broker was engaged to procure and did procure a master surety agreement from USF&G for the plaintiffs and their associates. When the relationship between the plaintiffs and their associates ended, the plaintiffs, on April 13, 1984, consulted with defendant Gilmore, notified him that the relationship with the others had terminated and inquired as to what procedural steps were needed to be taken to procure future bonding and bond indemnification solely for the plaintiffs' company. Two nonparties were in attendance at this most significant meeting, Mr. Larry Mackin and Mr. Denny Rowlette. During this meeting, defendant Gilmore contacted USF&G by telephone and inquired about future bonding and bond indemnification for the plaintiffs. Plaintiffs have asserted that as a result of this meeting and the defendants' affirmative actions the defendants were aware that the plaintiffs would rely upon the defendants to fulfill their fiduciary duties in providing the plaintiffs' insurance-related needs.

Further, paragraph 22 of the complaint recited that the bonds were procured by defendants for plaintiffs' former associates more than 30 days subsequent to April 13, 1984. Plaintiffs state that this is contrary to the notice and purpose of the meeting of April 13, 1984, and that the liability of the plaintiffs was the result. Obviously, plaintiffs claim notice to USF&G through defendant broker Gilmore.

At paragraph 18 of the complaint, plaintiffs indicate that they became obligated to finish certain identified construction projects and "that as a result of the aforementioned" suffered financial loss. In the *ad damnum*, plaintiffs pray for judgment in an amount in excess of $500,000.

Although the posture of this case would suggest that extended discovery has yet to be accomplished, it appears to me that by the plaintiffs' complaint the defendants have been informed much more than in a general way, by sufficient well-pleaded facts and logical inferences flowing from them to the extent necessary to defeat a mo-

tion to dismiss. I would further observe that it does not appear that the trial court was willing to consider any reasonable inferences.

Yet to be determined is whether the defendant broker owed a duty to the plaintiffs given that the case law suggests that a broker is to provide care, skill and diligence under the circumstances presented. Whether proper insurance-related services were provided is the important question to be decided.

As I see it, the trial court's decision here resulted from the trial court's failure to infer anything from the allegations of the complaint. As aforesaid, I find that the allegations and reasonable inferences are sufficient as a matter of law to state a cause of action for breach of fiduciary duty and breach of contract. In my opinion, the trial court's failure to draw reasonable inferences to sustain a cause of action at this stage of the pleadings constitutes an abuse of discretion and requires reversal on review.

I would remand this cause with directions to deny the motion to dismiss and allow plaintiffs to proceed with discovery. Obviously, if the facts as developed during discovery fail to sustain the elements of plaintiffs' cause of action, then a motion for summary judgment may be appropriate. However, at this juncture and tested by the proper standard of review, I do not find that the harsh result of a dismissal is required.