589 N.E.2d 1128 (1992)
226 Ill. App.3d 697
168 Ill.Dec. 728
LAKE COUNTY GRADING COMPANY OF LIBERTYVILLE, INC., Plaintiff-Appellant,
v.
GREAT LAKES AGENCY, INC., Defendant-Appellee.
No. 2-91-0596.
Appellate Court of Illinois, Second District.
March 27, 1992.
*1129 Paul E. Thompson, Thompson & Thompson, Libertyville, for Lake Co. Grading Libertyville.
Stephanie D. Stevens, Mark F. Wolfe, Bollinger, Ruberry & Garvey, Chicago, for Great Lakes Agency, Inc.
Justice NICKELS delivered the opinion of the court:
Plaintiff, Lake County Grading Company of Libertyville, Inc. (proposed insured), appeals the judgment of the circuit court which dismissed both counts of its complaint against defendant, Great Lakes Agency, Inc. (broker). The first issue on appeal is whether the proposed insured stated a cause of action when it alleged that the broker failed to perform its agreement to procure certain policies of insurance at a set premium. The second issue is whether the proposed insured can collect damages for an economic loss caused by the negligence of a broker. We reverse.
The proposed insured filed a two-count complaint based on the broker's alleged failure to procure insurance for the proposed insured in a timely fashion. This failure resulted in the proposed insured's prior policies of insurance expiring before new insurance policies were in place, which in turn resulted in the proposed insured's payment of excessive insurance premiums to obtain such insurance on short notice and without the benefit of arm's length negotiation.
The proposed insured alleged that in 1988 the broker solicited the proposed insured to purchase insurance policies of property, general liability, auto, and excess umbrella coverage, from carriers with whom the broker had business relationships and from whom the broker would thereby be paid a commission. The proposed *1130 insured's then existing policies of insurance were to expire December 31, 1988, which the proposed insured made known to the broker. Based on the broker's representations that the new insurance could and would be made effective at the expiration of its former policies, the proposed insured accepted the broker's offer to procure insurance. Although the annual premium was much greater, the broker quoted the proposed insured an initial premium of $60,800, and, in response to an invoice on January 4, 1989, the proposed insured issued a check for that amount. On the same day, the broker issued binders effective December 31, 1988, listing the carriers and the amounts of coverage, which were sent to the proposed insured along with a cover letter informing the proposed insured that such coverage had been bound and was written. Still later that day at 5 p.m., the proposed insured was notified that the carriers with whom the broker dealt had declined to issue the policies and that it had no insurance coverage.
In count I of the complaint alleging breach of an oral agreement, the proposed insured sought damages of $90,000 based on the difference between the quoted price of the insurance coverage and the actual price paid by the proposed insured to obtain insurance, which was the benefit of the proposed insured's bargain with the broker. Count II of the complaint sought damages based on the difference between the fair-market value of the coverage if obtained by arm's length negotiation and the inflated price paid by the proposed insured when it was forced to obtain insurance without such negotiation upon the broker's failure to do so. In count II, the proposed insured alleged that the broker had made several negligent misrepresentations. Specifically, the proposed insured alleged that the broker was in the business of supplying information on insurance coverage that was relied upon by its customers and that the broker had represented that it could obtain the requested coverages, agreed to do so, and represented that it had in fact done so. Further, the proposed insured alleged that, the broker had misrepresented to the insurance carriers that the proposed insured did not operate a landfill, when in fact the broker knew such was a part of the proposed insured's business.
The broker moved to dismiss the proposed insured's complaint pursuant to section 2-615 of the Code of Civil Procedure (Ill.Rev.Stat.1989, ch. 110, par. 2-615) asserting that, because an insurance broker is without authority to contract on behalf of an insurance carrier, the broker was not liable for "benefit of the bargain" damages sought in count I, and that the Moorman doctrine barred plaintiff's claim for economic damages in tort. (Moorman Manufacturing Co. v. National Tank Co. (1982), 91 Ill.2d 69, 88, 61 Ill.Dec. 746, 435 N.E.2d 443.) The circuit court granted the motion, and the proposed insured now appeals.
When considering a motion to dismiss, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the nonmoving party. (Board of Education v. A, C & S, Inc. (1989), 131 Ill.2d 428, 438, 137 Ill.Dec. 635, 546 N.E.2d 580; American Environmental, Inc. v. 3-J Company (1991), 222 Ill.App.3d 242, 247, 164 Ill.Dec. 733, 583 N.E.2d 649.) Our consideration is thus limited to only those facts appearing in the complaint and inferences that may be drawn therefrom. (Schnidt v. Henehan (1986), 140 Ill.App.3d 798, 801, 95 Ill.Dec. 194, 489 N.E.2d 415.) No cause of action should be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle a plaintiff to recover. American Environmental, 222 Ill.App.3d at 247, 164 Ill.Dec. 733, 583 N.E.2d 649.
To establish a contract to procure insurance, the proposed insured must allege that one of the parties proposes to be insured, the other party agrees to insure, and the subject, the period, the amount, and the rate of the insurance are ascertained or understood and the premium is paid if demanded. (Scarsdale Villas Associates, Ltd. v. Korman Associates Insurance Agency, Inc. (1988), 178 Ill.App.3d 261, 264, 127 Ill.Dec. 463, 533 N.E.2d 81; Gothberg v. Nemerovski (1965), 58 Ill. *1131 App.2d 372, 383, 208 N.E.2d 12.) The essential elements can be established by implication if they are not stated explicitly. (Scarsdale, 178 Ill.App.3d at 264, 127 Ill. Dec. 463, 533 N.E.2d 81.) If a broker procures insurance that fails to comply with the insured's directions, the proper measure of damages for the breach of a contract to procure insurance is generally determined by the terms of the policy which the broker failed to procure. Scarsdale, 178 Ill.App.3d at 264, 127 Ill.Dec. 463, 533 N.E.2d 81.
The proposed insured's complaint alleged that the broker "approached [the proposed insured] for the purpose of soliciting [the proposed insured's] insurance business," "promised [the proposed insured] that it could obtain insurance," and that the proposed insured "accepted [the broker's] offer to procure said insurance." The subject, period, and rate were ascertained as circumstantially evidenced by the proposed insured's payment of the initial premium and the broker's issuance of binders. Thus, the proposed insured's complaint properly pleaded sufficient facts to allege a claim for breach of a contract to procure insurance.
The broker asserts that, because it was not the agent of the insurance carriers, it could not issue the policies of insurance and was, therefore, not liable for the carriers' failure to issue such policies. Although the proposed insured seeks the benefit of his bargain with the insurance carriers, namely, a certain policy with a premium at a lower than the market price, its contract was with the broker. The carriers' refusal to honor its quotes was beyond the broker's control. The obligation to obtain the policy at that price was conditional upon the carriers' acceptance of the policy. However, the broker was obliged to act promptly and with diligence and without unreasonable delay. (Talbot v. Country Life Insurance Co. (1973), 8 Ill.App.3d 1062, 1065, 291 N.E.2d 830.) Thus, the broker's argument goes only to the proper measure of damages, which is the difference in the cost of the insurance caused by the broker's alleged delay.
We now turn to the application of the Moorman doctrine as a bar to recovery of economic damages in tort for negligent misrepresentation by an insurance broker. Previously, a broker's liability could be based on either a tort theory or a contract theory. (See Clear-Vu Packaging, Inc. v. National Union Fire Insurance Co. (1982), 105 Ill.App.3d 671, 675, 61 Ill.Dec. 212, 434 N.E.2d 365.) However, since 1982, the law in Illinois has generally restricted claims for economic loss to actions in contract. (Moorman, 91 Ill.2d at 88, 61 Ill. Dec. 746, 435 N.E.2d 443.) The rationale supporting the Moorman doctrine is that contract law provides a superior basis over tort law for the resolution of issues concerning the failed expectations of clients where only economic loss is claimed. (Moorman, 91 Ill.2d at 86-88, 61 Ill.Dec. 746, 435 N.E.2d 443.) Contract damages provide recompense for failed commercial expectations and yet do not expose professionals to unlimited and unforeseen damages for economic loss. Collins v. Reynard (Oct. 31, 1991), No. 70325, slip op. at 7 (reh'g granted).
However, Moorman is subject to certain exceptions. Those exceptions include not only intentional misrepresentation, but negligent misrepresentation by one who is in the business of supplying information (Moorman, 91 Ill.2d at 88-89, 61 Ill.Dec. 746, 435 N.E.2d 443), such as surveyors, credit bureaus, newspapers, auditors, credit bureaus, termite inspectors and appraisers. See Collins, slip op. at 3-4.
In this instance, the proposed insured's complaint alleged that, as an insurance broker, the broker was "in the business of furnishing information on insurance coverage which it knew would be relied upon by its customers." Bulk Service Corp. v. Buick (1990), 203 Ill.App.3d 739, 741, 148 Ill.Dec. 814, 561 N.E.2d 120, in which an insurance consultant was found to be barred by the Moorman doctrine, is not controlling. In Bulk Service, the plaintiff failed to allege that the defendant was in *1132 the business of supplying information to its customers. (Bulk Service, 203 Ill.App.3d at 741, 148 Ill.Dec. 814, 561 N.E.2d 120.) Our inquiry into the sufficiency of proposed insured's allegation in this instance is, however, unnecessary.
Although the Moorman doctrine has been applied to economic losses caused by professional malpractice, it does not apply to extracontractual duties such as an attorney's ethical and fiduciary duties. (2314 Lincoln Park West Condominium Association v. Mann, Gin, Ebel & Frazier, Ltd. (1990), 136 Ill.2d 302, 312, 318, 144 Ill.Dec. 227, 555 N.E.2d 346 (applying Moorman to professional architectural malpractice).) Thus, the "concept of duty is at the heart of the distinction drawn by the economic loss rule." (2314 Lincoln Park West, 136 Ill.2d at 314, 144 Ill.Dec. 227, 555 N.E.2d 346.) The exceptions to the Moorman doctrine are based on the principle that "the defendant owes a duty in tort to prevent precisely the type of harm, economic or not, that occurred." (2314 Lincoln Park West, 136 Ill.2d at 315, 144 Ill.Dec. 227, 555 N.E.2d 346.) Thus, we must consider the nature of the duty owed by the broker to the proposed insured and whether such duty encompassed the prevention of precisely the type of harm that occurred.
The relationship of an insurance broker and the proposed insured is a fiduciary one (American Environmental, 222 Ill.App.3d at 249, 164 Ill.Dec. 733, 583 N.E.2d 649; Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (1979), 68 Ill.App.3d 75, 80, 24 Ill.Dec. 464, 385 N.E.2d 376) even though the broker receives compensation from the third party (Economy Fire & Casualty Co. v. Bassett (1988), 170 Ill.App.3d 765, 772, 121 Ill.Dec. 481, 525 N.E.2d 539). An insurance broker's primary function is to negotiate and procure an insurance policy on behalf of an insured. (State Security Insurance Co. v. Burgos (1991), 145 Ill.2d 423, 434, 164 Ill. Dec. 631, 583 N.E.2d 547.) Illinois places a particular burden on an insurance broker to exercise competence and skill in rendering services. (Economy, 170 Ill.App.3d at 772-73, 121 Ill.Dec. 481, 525 N.E.2d 539.) The broker must inform the insured of all material facts within the broker's knowledge that may affect the transaction or the subject matter of the relationship and not mislead the insured. American Environmental, 222 Ill.App.3d at 250, 164 Ill.Dec. 733, 583 N.E.2d 649; Protective Insurance Co. v. Coleman (1986), 144 Ill.App.3d 682, 694, 98 Ill.Dec. 914, 494 N.E.2d 1241; Estergard, Eberhardt & Ackerman, Inc. v. Carragher (1982), 105 Ill.App.3d 816, 820, 61 Ill.Dec. 588, 434 N.E.2d 1185.
Inherent in the obligation to seek coverage are the duties to act with promptness and to notify the customer if the insurer declines to insure the risk so that the insured customer will not be lulled into a false feeling of security or suffer prejudicial delay in seeking coverage elsewhere. (American Environmental, 222 Ill.App.3d at 250, 164 Ill.Dec. 733, 583 N.E.2d 649; Wheaton National Bank v. Dudek (1978), 59 Ill.App.3d 970, 972, 17 Ill.Dec. 487, 376 N.E.2d 633; Talbot v. Country Life Insurance Co. (1973), 8 Ill. App.3d 1062, 1065, 291 N.E.2d 830.) A broker who takes an application may be said to have entered into a course of affirmative conduct and may be liable for misfeasance if unreasonable delay occurs. (Talbot, 8 Ill.App.3d at 1065, 291 N.E.2d 830.) A broker is liable for the failure to act with diligence to place the insurance in compliance with the principal's instructions. (Economy, 170 Ill.App.3d at 772, 121 Ill. Dec. 481, 525 N.E.2d 539.) Thus, the broker in this instance had the extracontractual fiduciary duty to procure insurance before the expiration of the proposed insured's former policies or to advise the proposed insured that such coverage was not available within sufficient time to allow the proposed insured to obtain other coverage.
While the broker argues on appeal that the damages were caused by the proposed insured's delay in accepting the quotes, such a fact and inference do not arise from the complaint. The broker may attempt to prove that the proposed insured caused the delay or that its reliance was unreasonable, but it must file the necessary pleadings to *1133 do so. Since the broker filed only a motion to dismiss, we must accept the allegations of the complaint as true and as stated. See American Environmental, 222 Ill.App.3d at 247, 164 Ill.Dec. 733, 583 N.E.2d 649.
For the above reasons, the order of the circuit court dismissing the proposed insured's complaint is reversed, and the cause is remanded for further proceedings.
Reversed and remanded.
DUNN and McLAREN, JJ., concur.