NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 8, 2008
Decided July 23, 2008

**Before**

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

| | |
|---|---|
| No. 03-2473 | Appeal from the United States District Court for the Northern District of Illinois, Western Division |
| Miller's Blasting Service, Inc., an Illinois corporation, Ronald D. Miller, and Mildred A. Miller, | |
| *Plaintiffs-Appellants*, | No. 99 C 50246 |
| *v.* | **Philip G. Reinhard**, *Judge*. |
| Texas AGA, Inc., a foreign corporation, Jack Zogg, and Legion Insurance Company, | |
| *Defendants-Appellees*. | |

**O R D E R**

Miller's Blasting Service, Inc. ("MBS") sued Texas AGA, Inc. ("AGA"), Jack Zogg, an AGA sales representative, and Legion Insurance Company asserting breach of contract, negligence, and state statutory claims surrounding MBS's workers'

compensation insurance coverage.  The district court entered summary judgment in favor of the defendants.  MBS appeals, and we affirm.

I.

Co-owned by Ronald D. Miller ("Ronald") and Mildred A. Miller ("Mildred"), MBS provides drilling services in quarries in Illinois and Wisconsin.  Mildred handled the insurance matters for MBS.  On May 4, 1997, when MBS's insurance company, Nobel Insurance Company ("Nobel"), informed Mildred that it was no longer going to perform agency functions for its insureds, Nobel advised Mildred that someone from Texas AGA, Inc. would be contacting her.  On July 8, 1997, AGA agent Jack Zogg met with Mildred and Ronald for the first time to discuss the possibility of AGA becoming MBS's insurance broker. During the course of that meeting, Zogg explained that AGA could not obtain a workers' compensation insurance quote without MBS first supplying AGA certain information, including documented workers' compensation claim histories known as "loss runs." Mildred, in turn, informed Zogg that MBS's current workers' compensation policy was scheduled to expire on August 6, 1997.[1] Mildred also told Zogg to "get her insurance," and Zogg responded that he would "take care of her."

On three separate dates, July 21, July 24, and August 4, AGA representatives phoned MBS to request loss runs.  Mildred stated that she was working on it and would provide AGA with loss runs. On August 4, 1997, AGA sent MBS an insurance proposal package which included various coverage types, but not workers' compensation, noting that a quote had not been obtained for this type of insurance.  Regarding the absence of a workers' compensation quote, AGA explained, "we have not received the workers [sic] compensation loss runs.  If we can be of any assistance here please let us know as we will pursue this as soon as they are received." Mildred testified at her deposition that after receiving this letter she relayed to Zogg and another AGA representative that she needed assistance in obtaining the loss runs. AGA agreed to assist Mildred, but did not provide any assurances that it would obtain the loss runs. Mildred testified at her deposition that she was "just waiting for [AGA] to get [workers' compensation insurance]" for MBS and did not continue to call MBS's prior insurance carrier, despite

---

[1]In fact, MBS's workers' compensation policy had already expired on August 2, 1995.

knowing that the policy had lapsed.[2]  Through the efforts of AGA employees, loss runs were eventually obtained on August 29, 1997, via facsimile time-stamped 3:05 p.m., which were forwarded to Legion Insurance Company on September 2, 1997.[3]

On September 3, 1997, MBS employee Mark Owens suffered fatal injuries while on a drilling job. The next day, September 4, 1997, Mildred phoned AGA to inquire whether AGA had secured workers' compensation insurance coverage. Zogg informed her that a quote had just been obtained the day before and that he was forwarding it on to her for her review.  When Mildred inquired about whether the policy could be backdated, Zogg told her that could not be done.  Legion Insurance Company ("Legion") issued MBS a workers' compensation policy on September 4, 1997, and MBS paid the requisite premium.  Initially, Legion listed the coverage dates as September 1, 1997, through September 1, 1998, but later re-wrote the policy in December 1997 to reflect a coverage period of September 4, 1997, through September 4, 1998.

In accordance with the Illinois Workers's Compensation Act, 820 ILCS 305/1 et seq., MBS paid Mark Owens's medical and burial expenses and a weekly death benefit to his widow.  MBS filed suit in the Northern District of Illinois against AGA, Zogg, and Legion with subject matter jurisdiction premised on diversity of citizenship asserting breach of contract, negligence, and statutory claims.  Legion filed a counterclaim for recision.  The district court entered summary judgment in favor of the defendants. Because this appeal involves only MBS's claims against AGA and Zogg, we will only address the district court's analysis as it relates to these defendants.  On the breach of contract claim, the district court concluded that there was no enforceable contract between MBS and AGA because they had not entered into an agreement to procure insurance. Also, even assuming there was a promise to secure insurance, the essential term for an enforceable agreement of premium amount was absent.  The district court

---

[2]Even if Mildred did not know her insurance had lapsed in 1995, she knew it had lapsed at this point because of her belief that MBS was covered until August 6, 1997.

[3]August 29, 1997 was the Friday before Labor Day, a national holiday in the United States.  September 2 in that same year was the Tuesday after Labor Day.  *See* United States Office of Personnel Management, 1997 Federal Holidays, http://www.opm.gov/Operating_Status_Schedules/fedhol/1997.asp (last visited May 24, 2008).

concluded that MBS's negligence claim also failed because AGA and Zogg repeatedly notified MBS that they needed MBS's loss runs to procure a workers' compensation policy, thereby fulfilling whatever duty they had to MBS. Regarding MBS's claim for insurance placement liability pursuant to 735 ILCS 5/2-2201, the district court concluded that it was a duplicate of MBS's negligence claim. MBS appeals.

## II.

We review a district court's grant of summary judgment de novo. *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 631 (7th Cir. 2004). All reasonable inferences from the evidence are drawn in the light most favorable to the non-moving party. *Id.* We may affirm a district court's grant of summary judgment on any ground supported by the record, even if it is differs from the district court's reasoning. *See Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). The parties agree that Illinois law applies in this diversity action.

On appeal, MBS asserts that the district court erred in granting summary judgment in favor of AGA and Zogg on both its breach of contract and negligence claims. MBS addresses these claims in tandem, asserting that their premise is similar. Specifically, MBS argued "that despite being requested by Miller's Blasting service, through Mildred A. Miller, to obtain workers' compensation insurance for both Illinois and Wisconsin, Texas AGA and Jack Zogg failed to do so timely, and further failed in their fiduciary duties to Millers." For the sake of clarity, we will address MBS's contract and negligence claims separately.

Under Illinois law, "[t]o establish a contract to procure insurance, the proposed insured must allege that one of the parties proposes to be insured, the other party agrees to insure, and the subject, the period, the amount, and the rate of the insurance are ascertained or understood and the premium is paid if demanded." *Lake County Grading Co. of Libertyville, Inc. v. Great Lakes Agency*, 589 N.E.2d 1128, 1130 (Ill. App. Ct. 1992). "The essential elements can be established by implication if they are not stated explicitly." *Id.* at 1131; *see Scarsdale Villa Assoc. v. Korman Assoc.*, 533 N.E.2d 81, 83 (Ill. App. Ct. 1988). An oral contract to insure may be formed even in the absence of duration and premium based on what had been assigned in prior policies and on custom and practice. *Devers v. Prudential Prop. & Cas. Ins. Co.*, 408 N.E.2d 462, 464 (Ill. App. Ct. 1980) (citing *Cont'l Ins. Co. v. Roller*, 101 Ill. App. 77 (1901)). Further, while price is an essential term of an insurance contract, "even if the amount of the premium is not

fixed, the contract is enforceable if the insured simply agrees to pay the amount to be charged by the insurer." *Id.* at 464-65.

MBS contends that the district court erred in concluding that there was no contract because the parties had no agreement on rates or premiums. In support, MBS asserts that Mildred did not have anyone else searching for workers' compensation insurance, that she engaged AGA and Zogg to procure insurance, and that she believed that she would accept whatever workers' compensation insurance that AGA procured. The first two facts do not point to the existence of a premium as required under Illinois law to establish a contract to procure insurance. The latter fact, however, might be enough to establish a contract, but MBS cites no evidence that Mildred communicated her intent to accept whatever insurance AGA obtained at whatever cost. Because there is no evidence that AGA had knowledge that MBS would accept whatever rate it quoted, MBS cannot establish a meeting of the minds about premiums, as Illinois law requires. Moreover, because AGA was working with MBS for the first time in 1997 there was no custom or practice upon which a premium could be inferred. Therefore, in the absence of an agreement on this essential term, there was no contract to procure workers' compensation insurance between AGA and MBS.

Even if MBS and AGA had entered into a contract to procure insurance, MBS's claim still fails because it did not supply AGA with loss runs, a condition precedent to this contractual relationship. "A condition precedent is defined as a condition in which performance by one party is required before the other party is obligated to perform." *Midwest Builder Distrib., Inc. v. Lord and Essex, Inc.*, — N.E.2d —, 2007 WL 3341696 at *18 (Ill. App. Ct. 2007) (citation omitted). At their first meeting, Zogg informed Mildred that AGA needed MBS's loss runs before it could provide MBS with a quote for workers' compensation insurance. MBS was on notice from the beginning of its relationship with AGA that in order to secure workers' compensation insurance it first needed to provide AGA with loss runs so a quote could be obtained. In addition to the initial notice, AGA representatives phoned MBS three separate times requesting loss runs, and still MBS did not provide them to AGA. Finally, after receiving AGA's August 4th letter informing MBS that it did not provide a workers' compensation quote because of the lack of loss runs, Mildred contacted Zogg and requested that AGA obtain them. Zogg responded that AGA would try, but could not be definite that AGA could obtain them. AGA personnel sought and ultimately received loss run information from MBS's previous insurance agent. Once AGA finally did obtain the

loss runs on the afternoon of August 29th, it acted without delay by submitting them to Legion the next business day in order to obtain a quote. After MBS dropped the ball, AGA acted promptly and efficiently. MBS failed to satisfy the condition precedent of supplying AGA with the loss runs. Therefore, even if MBS and AGA had entered into a contract, AGA did not breach a contract to procure insurance.

Turning to MBS's negligence claim, MBS contends that defendants were negligent by failing to advise it to renew any other workers' compensation coverage it may have had in place. An insurance broker has a fiduciary duty to negotiate and procure insurance on behalf of the insured with skill and competence. *Lake County Grading Co.*, 589 N.E.2d at 1132. "Inherent in the obligation to seek coverage are the duties to act with promptness and to notify the customer if the insurer declines to insure the risk so that the insured customer will not be lulled into a false feeling of security or suffer prejudicial delay in seeking coverage elsewhere." *Id.* MBS claims that AGA breached these duties because Mildred had informed AGA that while she had renewed the Wisconsin policy, MBS still needed coverage. However, as Mildred herself acknowledged in her deposition, AGA repeatedly informed MBS that it was unable to obtain workers' compensation insurance quotes without the requested loss runs. This included a specific written reminder on August 4, 1997. All of these notifications took place before August 6th, the date upon which Mildred had informed Zogg that MBS's workers' compensation policy was to expire. MBS does not demonstrate any efforts that it made to provide defendants with this necessary information. Yet, MBS contends that AGA and Zogg lulled it into a false sense of security by engaging in certain affirmative conduct, specifically an application AGA faxed to InsurAmeriCorp on July 17, 1997. This assertion is unavailing. First, the application was only a partial application made in the process of putting together a proposal. More importantly, any significance MBS assigns to it is undermined by the fact that after the date of this application AGA continued to notify MBS that it needed MBS's loss runs, specifically citing their absence when presenting MBS with an insurance proposal that notably did not include workers' compensation coverage. Finally, once AGA received the required loss run documents, it promptly and efficiently obtained the promised workers' compensation insurance quotation. Therefore, AGA was not negligent in procuring workers' compensation insurance for MBS.

In addition to seeking relief under breach of contract and negligence theories, MBS also cites 735 ILCS 5/2-2201(a), an insurance placement liability statute, which

codifies the ordinary care required of insurance producers under common law negligence.[4] MBS does not assert additional arguments in support of its statutory claim, but merely references the arguments set forth in its breach of contract and negligence discussions. Therefore, for the reasons set forth above, we conclude that the district court properly granted summary judgment in favor of AGA and Zogg on this claim as well.

### III.

There was no contract to procure insurance between AGA and MBS. However, even if there was such a contract, MBS failed to satisfy the condition precedent by not providing AGA with loss runs. MBS also was not negligent in seeking workers' compensation insurance coverage for MBS. Therefore, the district court did not err in granting summary judgment in favor of Zogg and AGA on MBS's contract, negligence, and statutory claims. We AFFIRM.

---

[4] 735 ILCS 5/2-2201(a) provides: "An insurance producer, registered firm, and limited insurance representative shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured."