Christopher PLUMB, Plaintiff–Appellee,

v.

FLUID PUMP SERVICE, INCORPORAT-
ED, Defendant–Cross–ClaimantTh-
ird/Party Plaintiff–Appellant,

v.

STAR MARKETING AND ADMINISTRA-
TION, INCORPORATED, doing busi-
ness as Starmark, Trustmark Insurance
Company and Time Insurance Company,
Cross–Defendants–Appellees,

and

Starmark Trust and Christensen Key
Financial, Incorporated, Third/Party
Defendants–Appellees.

No. 96–2688.

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1997.

Decided Aug. 27, 1997.

Danny L. Worker, Worker & Power, Fred R. Harbecke (argued), Chicago, IL, Robert A. Gornik, Wrobel & Fidler, Glen Ellyn, IL, for Plaintiff–Appellee.

David F. Schmidt (argued), Joseph J. Hasman, Peterson & Ross, Anthony J. Tunney, Pretzel & Stouffer, Steven R. McMannon (argued), Matthew B. Parker, Tribler, Orpett, Palmer & Crone, Minoy Kallus (argued), Thomas H. Fegan, Johnson & Bell, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and WOOD, JR. and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

On December 30, 1993, Kyle Plumb was involved in an automobile accident that resulted in severe bodily injuries, a lengthy hospital stay and hospital expenses exceeding $160,000. Kyle's father, Christopher Plumb,

had worked for Fluid Pump Services, Incorporated ("Fluid") for over ten years, and Mr. Plumb thought his son's hospital stay would be covered by an insurance policy that had been set up for him by Fluid. However, Fluid had stopped paying its premiums. As a result, when Mr. Plumb submitted his son's hospital bills to the insurers, payment was denied. Mr. Plumb then filed suit against Fluid and the insurers. Fluid filed a cross-complaint against the insurers and a third-party complaint against the insurance trust that issued its policy and the company that assisted Fluid with obtaining insurance. The parties' claims arose under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and state law. After the district court dismissed most of the claims, Mr. Plumb and Fluid settled.[1] The district court dismissed all of Fluid's cross-claims and third-party claims. Fluid now appeals. We affirm the district court's judgment in large part, but we vacate a portion of it and remand the case for further proceedings.

I

BACKGROUND

A. Facts

Mr. Plumb's complaint named as defendants Fluid, Star Marketing and Administration, Inc. ("Star Marketing"), Benefit Trust Life Insurance Company and Time Insurance Company. Fluid then filed a third-party complaint against the Starmark Trust and Christensen Key Financial, Incorporated ("Christensen").[2] Fluid, Mr. Plumb's employer, is not a self-insurer; rather, it provides medical and health insurance for its employees through insurance companies. In October 1991, Fluid applied for health care coverage with Starmark. In that same month, Starmark issued a certificate to Fluid designating it a "participating employer" and issued certificates of insurance to each of Fluid's employees, including Mr. Plumb, designating him or her an "eligible employee" under the plan. Fluid also received a "Participating Employer Administration Guide" ("Administrative Guide"), which comprehensively explained the plan and its operation.

Once the Starmark plan was up and running, Fluid employees began to experience difficulties with Starmark's claims processing. According to Fluid, Starmark would demand excessive information, insist that the doctors were charging too much and handle complaints in an unpleasant and belated manner. All in all, Fluid's employees were having a difficult time obtaining payments from Starmark when medical attention was needed and sought. These problems, along with the fact that Starmark had decided to increase Fluid's premiums effective November 1, 1993, caused Fluid to begin searching for another company with which to insure its employees. In that effort, Fluid contacted Allan Thrasher, an insurance salesman. Through Christensen, the other third-party defendant brought into this suit by Fluid, Thrasher arranged for Time Insurance Company ("Time") to insure Fluid's employees. Time issued a group insurance certificate to Fluid, and Time's coverage began, as promised, on January 1, 1994.

Meanwhile, Fluid had failed to pay Starmark its premiums in November and December 1993. The Administrative Guide described the consequences of Fluid's failure. It provided that Fluid had a 31day grace period for payment and that coverage would terminate after that grace period. In this case, once Fluid failed to pay its premiums, Starmark notified Fluid of the termination of coverage; the termination became effective on December 2, 1993. On December 30, 1993, Mr. Plumb's child, Kyle, was injured severely in an automobile accident. The ac-

---

**1.** At oral argument, counsel for Fluid informed us that Fluid has taken an assignment of Mr. Plumb's rights in the parties' settlement agreement. See infra part II.D.1.

**2.** The Starmark Trust, a multi-employer insurance trust, issues medical insurance. The Trustmark Insurance Company, f/k/a Benefit Trust Life Insurance Company, is an insurance company that provided a contract of medical insurance to the Starmark Trust. Star Marketing and the Starmark Trust had an agreement whereby Star Marketing would market and administer that contract to employers. To simplify matters, we shall refer to these three parties collectively as "Starmark" in this opinion.

cident having occurred between December 2 and January 1, both Starmark and Time denied coverage. Time denied coverage for the bills accrued after January 1 because Kyle was an inpatient on the day that Time's coverage commenced; under Time's policy, coverage did not begin until the end of hospital confinement if the covered individual was in the hospital on the effective date of the policy.

Starmark's policy provided that, if coverage ended for any reason, the employees would be granted the right to convert to individual coverage. This conversion privilege was to be effective for 31 days after the Starmark policy terminated, if the employees were given notice of the right to convert at least 15 days before the end of that 31-day period. In the event that notice was given later, employees were to have the right to convert for 15 days after notice was actually given; but, in any event, the plan provided that the period of time to apply for conversion would be no longer than 60 days after the original 31 days allowed. In this case, no notice was given, so Mr. Plumb would have been able to exercise his right to convert to individual coverage with Starmark until the beginning of March 1994. Mr. Plumb, however, never converted; he apparently was never told that his insurance coverage had terminated or that he could convert. Mr. Plumb's certificate of insurance provided that, if his coverage terminated, he would be given notice of the right to convert at least 15 days before the end of the original 31-day period allowed for conversion. The Administrative Guide stated that, when coverage is terminated, the employer is to notify its employees of the right to convert to individual coverage. Fluid nevertheless claims that it did not know of its responsibility to notify Mr. Plumb or its other employees of their conversion rights. The agreement between Starmark and Fluid, entitled "Participating Employer Application and Agreement," provides:

> The Employer understands that as an employer he is establishing this plan and that neither Star Marketing and Administration, the Contractholder Trustees, nor the [Benefit Trust Life] Insurance Company is acting as "sponsor," as defined in the Employee Retirement Income Security Act of 1974 (ERISA), and that any compliance under this act that is applicable to the sponsor will be fulfilled by the employer....
>
> ....
>
> The Employer also requests that Star Marketing and Administration perform other administrative services as he and Star Marketing and Administration may mutually agree upon in connection with his employee welfare benefit plan ..., provided, however, that no such administrative services shall involve the exercise of discretion by Star Marketing and Administration.

R.32, Ex.A at 4.

**B. District Court Proceedings**

One set of claims brought by Mr. Plumb in his complaint and by Fluid in its cross-claim and third-party complaint alleged breach of fiduciary duty by Starmark for failure to notify Mr. Plumb of the lapse in coverage and of his conversion rights. The district court dismissed these claims on the ground that Starmark was not a "fiduciary" within the meaning of ERISA. *See* 29 U.S.C. § 1002(21)(A). Noting that a party may be a fiduciary with respect to some activities and not others, the court held that Starmark was not a fiduciary with respect to notifying participants of the termination of coverage or possible conversion rights. In its view, the plan documents show that Fluid had the responsibility to notify.

Mr. Plumb also brought an estoppel claim against Starmark, alleging that its representatives had made certain representations of coverage to Mr. Plumb and that Starmark, as a result, should be estopped from denying coverage. Fluid asserted estoppel, as well, claiming that Starmark had knowingly withheld information from Fluid. Relying on *Coleman v. Nationwide Life Insurance Co.*, 969 F.2d 54 (4th Cir.1992), *cert. denied*, 506 U.S. 1081, 113 S.Ct. 1051, 122 L.Ed.2d 359 (1993), the district court held that estoppel could not be invoked to enlarge the coverage specified in the Starmark policy. When coverage has terminated due to the failure to

pay premiums, the court held, an estoppel theory cannot be utilized to restore coverage. Moreover, with respect to Fluid, the court held that an estoppel theory was unavailable because Fluid admitted that Starmark had notified it that coverage would end in December if its premiums were not paid.

Mr. Plumb's claim against Time was that Time had violated an Illinois insurance statute that purportedly requires insurance policies to cover preexisting conditions if the insured had coverage with another insurance company 30 days prior to the commencement of the new coverage. See 215 ILCS § 95/20. The district court held that any remedy that could be obtained under the statute was preempted by ERISA. The court recognized that state laws that regulate insurance are saved from preemption by ERISA, *see Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), but held that ERISA is the exclusive source for any remedy. Accordingly, any remedy under the Illinois statute was preempted.

Finally, the district court dismissed Fluid's claim against Christensen for breach of fiduciary duty under state law. Fluid's third-party complaint alleged that Christensen was an agent of Fluid and had a duty to inform Fluid of the consequences of allowing its Starmark policy to lapse prior to the effective date of replacement coverage. The court held that the claim was preempted by ERISA because it "relate[d] to" the Starmark ERISA plan. 29 U.S.C. § 1144(a). Moreover, Fluid had failed to allege facts that would hold Christensen liable as a fiduciary under ERISA; as a result, the court dismissed the third-party complaint against Christensen.

## II

## DISCUSSION

### A. Starmark

#### 1. Fiduciary Duty

■ The district court was correct to dismiss the breach-of-fiduciary-duty claims against Starmark if indeed Starmark was not an ERISA "fiduciary"; sensibly, "[a] claim for a breach of fiduciary duties under ERISA is only valid against a 'fiduciary.'" *Klosterman v. Western Gen. Management, Inc.*, 32 F.3d 1119, 1122 (7th Cir.1994). ERISA defines the term "fiduciary" as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

■ 29 U.S.C. § 1002(21)(A). The definition provides that a person shall be deemed a fiduciary "to the extent" he or she performs one of the enumerated tasks. Accordingly, a person may be an ERISA fiduciary for some purposes, but not for others. *Klosterman*, 32 F.3d at 1122; *Johnson v. Georgia–Pacific Corp.*, 19 F.3d 1184, 1188 (7th Cir.1994); *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984); 1 Ronald J. Cooke, ERISA Practice and Procedure § 6:2, at 6–16 (2d ed.1996). In assessing whether a person can be held liable for breach of fiduciary duty, "a court must ask whether [that] person is a fiduciary with respect to the particular activity at issue." *Coleman*, 969 F.2d at 61.

■ Fluid claims that Starmark breached a fiduciary duty by failing to notify Mr. Plumb of his conversion rights upon the termination of the policy. We must determine, therefore, whether Starmark was a fiduciary with respect to the activity of notifying plan participants and beneficiaries. The first place we look to make that determination is the Starmark plan documents; an insurer generally will not be held to be a fiduciary with respect to an activity unless the plan documents show that the insurer was responsible for that activity. Id. at 61 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)); see also *Kerns v. Benefit Trust Life Ins. Co.*,

992 F.2d 214, 217 (8th Cir.1993); *Willett v. Blue Cross & Blue Shield*, 953 F.2d 1335, 1340 (11th Cir.1992). The plan documents here do not allocate any discretionary authority to Starmark to provide the required notice. The agreement between Fluid and Starmark specified that Starmark would perform limited administrative services. It is true that the agreement provided that Starmark would provide other administrative services in the event Fluid made a request and the parties mutually agreed on what additional services Starmark would perform. But the parties' contract was clear that, in any event, "no such administrative services shall involve the exercise of discretion by Star Marketing and Administration." R.32, Ex.A at 4; see *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir.1992) ("ERISA makes the existence of discretion a sine qua non of fiduciary duty."). The agreement does not allocate any notification duties to any of the Starmark defendants. What is more, Fluid acknowledged in the agreement that it "underst[ood] that as an employer [it was] establishing th[e] plan and that neither Star Marketing and Administration, the Contractholder Trustees, nor the [Benefit Trust Life] Insurance Company [was] acting as 'sponsor,' as defined in [ERISA], and that any compliance under this act that is applicable to the sponsor w[ould] be fulfilled by [Fluid]." R.32, Ex.A at 4. Fluid points out that the certificate of insurance given to Mr. Plumb says simply that "[y]ou will be given notice of the right to convert," R.32, Ex.C at 41, without naming who would give the notice. Nevertheless, that document does not provide that Starmark was to be the party providing notice, and Fluid points to no document supporting its view of the parties' agreement.

Not only do the plan documents not allocate any responsibility for notification to Starmark, but the only documents that mention who is to bear that particular obligation place it squarely on Fluid's shoulders. Noti-

fication responsibilities are mentioned twice in the Administrative Guide. Inside the guide's front cover, a letter directed to the participating employer, Fluid in this case, provides that "[w]hen coverage is terminating for an employee or dependent you must ... notify the terminating individual of his or her rights to continue medical benefits at his own expense, or convert his medical benefits to an individual policy." R.32, Ex.B. Fluid notes that the letter directs the employer's attention to section 111 of the guide, which provides only that "[y]ou *should* give notice." *Id.* at 10 (emphasis added). But the "should" language does not raise the ambiguity Fluid suggests. First, the "should" is directed towards the *timing* of the notice that must be given. The employer "must" be the one giving notice, and section 111 suggests that an employer "should" give that notice at least 15 days before the end of the 31–day period allowed for conversion. Second, regardless of the Administrative Guide's specific language informing the employer of its notification duties, neither it, nor any other document associated with the plan, assigns any responsibility for notification to Starmark. *See Kerns*, 992 F.2d at 217.

It is true that a person can become a fiduciary with respect to a particular activity even if there is no formal written allocation of the duty. See *Coleman*, 969 F.2d at 61–62 (citing *Leigh*, 727 F.2d at 134 n.33); *Kerns*, 992 F.2d at 217. Yet Fluid makes no argument that Starmark, through its actions, voluntarily assumed any authority to notify in spite of the lack of any such delegation in the plan documents. Fluid can point to nothing on paper or in the realities of the parties' relationship to support conferring a notification duty upon Starmark. An insurer cannot "be held to have discretion over an activity simply because it is not prohibited from performing such activity." *Coleman*, 969 F.2d at 62; see also *Kerns*, 992 F.2d at 216–17. There must be more.[3] Starmark cannot

---

**3.** Fluid invites our attention to 215 ILCS § 5/367i. That section reads in pertinent part:
Any insurer discontinuing a group health insurance policy shall provide to the policyholder for delivery to covered employees or members a notice as to the date such discontinuation is to be effective and urging them to refer to their group certificates to determine what contract rights, if any, are available to them.
215 ILCS § 5/367i. Fluid does not argue, however, that this statute creates, by its own force, any substantive rights in the parties. We note

rightly be considered a fiduciary with respect to notification of plan participants; as a result, it cannot be held to have breached a fiduciary duty by failing to notify. Accordingly, the district court correctly dismissed the breach-of-fiduciary-duty claims against Starmark.

### 2. Estoppel

Mr. Plumb included an estoppel claim in his complaint. He alleged that, after Kyle was hospitalized, a Starmark representative said over the telephone that Kyle's expenses would be covered under the Starmark plan. Mr. Plumb's estoppel claim is foreclosed in this circuit. ERISA does not permit the oral modification of substantive provisions of a written ERISA plan. *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 875–76 (7th Cir.1997); *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 650 (7th Cir. 1993); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992). In other words, if the written terms of an ERISA plan do not entitle the claimant to the coverage sought, benefits will not be forthcoming on the basis of oral representations to the contrary. *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir.1992); *Coleman*, 969 F.2d at 60. "One of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written, thus ruling out oral modifications." *Pohl*, 956 F.2d at 128. Here, the terms of the Starmark plan did not entitle Mr. Plumb to benefits; the premiums had not been paid, the policy had been canceled, and he had not converted to individual coverage. The oral representations that his son's injuries would be covered therefore contradicted the plain terms of the contract. Under these circumstances, Mr. Plumb cannot recover a benefit to which his plan did not entitle him.

Jettisoning Mr. Plumb's version of estoppel on appeal, Fluid recasts Starmark's failure to notify in estoppel terms. Before this court, Fluid submits that it was in the dark about its notification responsibilities, that Fluid relied on Starmark to keep it informed, and that Starmark knew that Fluid was in the dark but failed to clue Fluid in. In Fluid's view, these facts give rise to a valid estoppel claim under ERISA: Starmark should be estopped from denying coverage and conversion rights on account of its intentional silence. This claim, however, is a mere repackaging of Fluid's breach-of-fiduciary-duty claims, which we have held cannot be maintained. Starmark simply did not have a duty to notify Fluid's employees of their conversion rights; nor is there any basis to hold Starmark to a duty to inform Fluid of Fluid's duty to notify its employees of those rights. Even if such a duty had existed, Starmark clearly informed Fluid in the Administrative Guide that, in the event the policy lapsed, Fluid was required to notify its employees that they could convert to individual coverage. If, as Fluid claims, it was ignorant of its responsibilities in this regard, Starmark is not to blame; Fluid should have read the materials provided to it by Starmark. Moreover, an estoppel " 'arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation.' " *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 648 (7th Cir. 1993) (quoting *Black v. TIC Inv. Corp.*, 900 F.2d 112, 115 (7th Cir.1990)). Here, Starmark's silence can hardly be characterized as misleading. At bottom, Fluid wants its employees to be covered even though Fluid failed to pay its premiums and coverage is unavailable under the terms of the Starmark plan. Starmark's mere silence in the face of its not having a duty to speak cannot form the basis of an estoppel claim.

that the Court of Appeals for the Eleventh Circuit in *Smith v. Jefferson Pilot Life Insurance Co.*, 14 F.3d 562 (11th Cir.), cert. denied, 513 U.S. 808, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994), held that a statute such as this one regulates the administration of the policy, not its substantive terms, and therefore is not saved from preemption. *Id.* at 569–71. It reasoned that a provision of this

nature does not impact directly the original apportionment of risks covered by the policy but merely attempts, through a procedural mechanism, to minimize the risk of non-coverage to those whose policies lapse. *Id.* at 569–70 & n. 9. The parties did not brief the significance of *Smith* in this case.

## B. *Christensen*

In its third-party complaint, Fluid alleged that Christensen breached a fiduciary duty arising under state law. According to Fluid's allegations, Christensen "had a duty to inform Fluid that discontinuance of Fluid's Plan with The Starmark Trust prior to the effective date of replacement coverage[ ] could have severe consequences"; Christensen allegedly violated this duty by failing to "inform Fluid of the potentially dire circumstances which could result if Fluid ceased paying premiums to Starmark." R.84 at 21 ¶¶ 44–45. Fluid faults Allan Thrasher, the insurance salesman who arranged through Christensen for Fluid to be covered by Time, for the same omission. According to Fluid, Christensen is on the hook for Thrasher's failings because Christensen was Thrasher's principal. The pleadings are unclear, but it seems that Christensen administers Time's insurance policies.

■ Fluid's claims are problematic in several ways. The district court held that the state law claim was preempted by ERISA insofar as it "relate[s] to an[ ] employee benefit plan." 29 U.S.C. § 1144(a). Indeed, it is doubtful whether Fluid's breach-of-fiduciary-duty claim could survive ERISA preemption analysis in light of its substantial connection with the Starmark and Time policies and their terms.[4] "[E]ven if a claim under state law escapes the broad preemption clause in ERISA," though, the plaintiff "still needs a theory of recovery valid under state law." *Decatur Memorial Hosp. v. Connecticut Gen. Life Ins. Co.*, 990 F.2d 925, 927 (7th Cir.1993). Because ERISA preemption often turns on the special facts of the case and the specific nuances of state law, evaluating the preemptive force of ERISA in light of a nonexistent state law claim is not only a fruitless endeavor but an exercise fraught with difficulties. We need not undertake that exercise because, even assuming the absence of preemption, there is no valid underlying state law claim. For the reasons that follow, we have determined that Illinois would not recognize a claim for breach of fiduciary duty under the facts alleged by Fluid and affirm the district court's dismissal on that basis. *See Schweiker v. Hogan*, 457 U.S. 569, 585 & n. 24, 102 S.Ct. 2597, 2607, 73 L.Ed.2d 227 (1982). "Until Illinois recognizes a claim of the sort [Fluid] advances, we need not decide whether ERISA would preempt a claim based on that theory." *Decatur Memorial Hosp.*, 990 F.2d at 928.

Fluid's claim is weak; it contends that Christensen should have informed it of the obvious dire consequences of allowing its policy with Starmark to lapse. Fluid, however, knew of those consequences; that failure to pay premiums would result in the lack of coverage was clear in the Starmark policy. Indeed, the first page of the Administrative Guide states clearly that coverage would terminate 31 days after the date the premium was due. Moreover, Fluid concedes that it received Starmark's notice of termination and that it knew the Starmark policy would be terminated if not reinstated. See Appellant's Br. at 36. Because Fluid knew the consequences of not paying premiums, it cannot hold Christensen liable for not informing it of the same. *See Faulkner v. Gilmore*, 251 Ill.App.3d 34, 190 Ill.Dec. 455, 458–59, 621 N.E.2d 908, 911–12 (1993); 3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 46:37, at 46–51 (1996).

On appeal, Fluid takes a more refined view of its state law claim. Rather than faulting Christensen for not informing it that coverage would lapse if it did not pay premiums, Fluid focuses on its claim that Christensen should have given it the information contained in section 2007.90 of the Illinois Administrative Code. *See* Ill. Admin. Code tit. 50, § 2007.90. Section 2007.90 requires insurers and their agents to inform applicants that preexisting conditions may not be covered under a new policy and that they should consult with their present insurer regarding the proposed replacement coverage. However, because Fluid fears that section 2007.90 is

---

4. See, e.g., *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Anderson v. Humana, Inc.*, 24 F.3d 889 (7th Cir.1994); *DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457 (7th Cir.1990); *Massachu-setts Cas. Ins. Co. v. Reynolds*, 113 F.3d 1450 (6th Cir.1997); 1975 *Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401 (3d Cir.1992), cert. denied, 506 U.S. 1086, 113 S.Ct. 1066, 122 L.Ed.2d 370 (1993).

preempted by ERISA, Fluid does not rely explicitly on the section as the basis for recovery. Rather, it says that, under Illinois common law, Christensen had a fiduciary duty to provide to Fluid information similar to that found in section 2007.90.

The case law cited by Fluid that deals with insurance brokers does not support its claim. "In Illinois, an insurance broker must exercise competence and skill when rendering the service of procuring insurance." *Kanter v. Deitelbaum*, 271 Ill. App.3d 750, 208 Ill.Dec. 215, 217, 648 N.E.2d 1137, 1139 (1995); *accord Shults v. Griffin–Rahn Ins. Agency, Inc.*, 193 Ill.App.3d 453, 140 Ill.Dec. 596, 598, 550 N.E.2d 232, 234 (1990). To be sure, the relationship between the insured and insurance broker is a fiduciary one. *Faulkner*, 190 Ill.Dec. at 458, 621 N.E.2d at 911. But the duties owed to the insured do not include the one that Fluid would impose in this case.[5] The basic duties of an insurance broker are "to procure insurance in a timely manner and to procure insurance in accordance with the client[']s special circumstances after being informed about the client[']s needs." *Faulkner*, 190 Ill.Dec. at 458, 621 N.E.2d at 911 (internal citations omitted); *accord Lake County Grading Co. v. Great Lakes Agency, Inc.*, 226 Ill.App.3d 697, 168 Ill.Dec. 728, 732, 589 N.E.2d 1128, 1132 (1992). A broker also is obligated not to mislead the insured. *Id.* "The primary function of an agent or broker acting in an agency relationship for an insured is faithfully to negotiate and procure an insurance policy according to the wishes and requirements of the insured." *Nielsen v. United Servs. Auto. Ass'n*, 244 Ill.App.3d 658, 183 Ill.Dec. 874, 879, 612 N.E.2d 526, 531 (1993); *accord Shults*, 140 Ill.Dec. 596, 550 N.E.2d at 234; *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 265–66 (7th Cir. 1986) (Illinois law).

Here, there is no allegation that Thrasher or Christensen misled Fluid or otherwise breached the common law duties owed under Illinois law. Fluid does not "allege that [Christensen and Thrasher] failed to procure insurance according to their wishes."

*Nielsen*, 183 Ill.Dec. at 879, 612 N.E.2d at 531; *see Shults*, 140 Ill.Dec. 596, 550 N.E.2d at 234. There is no allegation that Fluid requested a policy without a preexisting condition restriction. Nor does Fluid allege that Thrasher or Christensen knew of any Fluid employee's preexisting condition or that they had any basis to suspect that a restriction on the coverage of preexisting conditions would be of concern to Fluid. *Cf. Mackinac v. Arcadia Nat'l Life Ins. Co.*, 271 Ill.App.3d 138, 207 Ill.Dec. 781, 784–85, 648 N.E.2d 237, 240–41 (1995). Indeed, Kyle's injuries did not occur until December 30, two days before the effective date of Time's policy and after Thrasher had completed the application process. Thrasher promised Fluid that the Time coverage would begin on January 1, 1994, and he followed through on that promise. Thrasher therefore did not inform Fluid that he had obtained insurance when he had not and otherwise did not mislead Fluid in any way. *See Kanter*, 208 Ill.Dec. at 218, 648 N.E.2d at 1140. Further, in Illinois, insureds have the burden of knowing the contents of their insurance policies. *Nielsen*, 183 Ill.Dec. at 877, 612 N.E.2d at 529. In contrast, brokers are not required to sell only full coverage to insureds. *Id.* 183 Ill. Dec. at 878, 612 N.E.2d at 530. "Such a policy would overrule the clear law that insureds have the primary responsibility to determine their own insurance needs." *Id.* Fluid does "not allege that [it] did not know what the terms of [its] policy were or that [it] had requested additional coverage." *Id.* Fluid's allegations therefore foreclose its claim. In Illinois, "a broker is not liable if he acts in good faith and with reasonable care, skill, and diligence to place the insurance in compliance with his principal's instructions." *Faulkner*, 190 Ill.Dec. at 458, 621 N.E.2d at 911. Fluid's allegations do not state a claim for breach of fiduciary duty against Christensen and Thrasher as insurance brokers.

Nor did any action on Christensen's part cause Fluid to incur damages. Fluid's claim against Christensen seeks to recover what it had to pay Mr. Plumb. Yet this "dire consequence" of allowing its Starmark policy to lapse was caused by Fluid's knowing act of

5. See generally 3 Russ & Segalla, Couch on Insurance 3d sec.sec. 46:27–46:75.

allowing its policy to lapse, not by the failure to receive any information from Christensen. Fluid cannot escape the fact that, if it would have paid its premiums, Kyle's injuries would have been covered under the Starmark plan. Indeed, if it would have notified Mr. Plumb of his conversion rights, as the Starmark plan required it to do, it would not have been liable for Kyle's injuries. Fluid itself contends that Mr. Plumb could have converted to individual coverage until March—after his son's accident occurred. Fluid should have read the materials submitted to it by Starmark; it cannot now shift the burden of its failure to Christensen. As between Christensen and Fluid, Fluid's actions clearly are to blame for the costs it incurred to pay Kyle's medical costs.

### C. *Time*

Mr. Plumb included a count in his complaint, styled as a pendent state claim, alleging that Time's denial of medical benefits to Kyle violated 215 ILCS § 95/20. Fluid cross-claimed against Time alleging a breach of fiduciary duty under ERISA based on that same Illinois statute. The district court held that the Illinois statute conflicted with ERISA's remedial scheme and was preempted, at least insofar as a participant or beneficiary relies upon it to receive benefits under an ERISA plan.

### 1.

ERISA's preemption provision provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .

■■■ 29 U.S.C. § 1144(a). Although the scope of ERISA preemption has proved difficult to delineate, primarily because of the preemption provision's " 'unhelpful text,' " the Supreme Court has "long acknowledged that ERISA's pre-emption provision is 'clearly expansive.' " *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.,* —— U.S. ——, ——, 117 S.Ct. 832, 837, 136 L.Ed.2d 791 (1997) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 656, 115 S.Ct. 1671, 1676–77, 131 L.Ed.2d 695 (1995)). We agree with the parties that the Illinois provision at issue relates to Time's plan and therefore falls within ERISA's general preemption provision.

ERISA, however, "saves" from preemption state laws that regulate insurance. *See* 29 U.S.C. § 1144(b)(2)(A) ("Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.").[6] The relevant portion of the state law at issue in this case states:

Health benefit plans covering small employers ... shall be subject to the following provisions, as applicable:

(A.) Preexisting condition limitation: No policy provision shall exclude or limit coverage for a preexisting condition for a period beyond twelve (12) months following the effective date of a person's coverage.

(B.) Portability of coverage: The preexisting condition limitation period shall be reduced to the extent a person was covered under a prior employer-based health benefit plan if:

1) the person is not a late enrollee; and

2) the prior coverage was continuous to a date not more than thirty days prior to the effective date of the new coverage,

---

**6.** The "deemer clause," 29 U.S.C. § 1144(b)(2)(B), "states that an employee-benefit plan shall not be deemed to be an insurance company 'for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.' " *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 740–41, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (empha-sis omitted) (quoting 29 U.S.C. § 1144(b)(2)(B)). The saving and deemer clauses' combined effect "results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not." *Id.* at 747, 105 S.Ct. at 2393. Because this case concerns an insured plan, the deemer clause is inapplicable.

exclusive of any applicable waiting period.

215 ILCS § 95/20.[7]

There is no doubt that § 95/20 falls within the saving clause. The law is much like the mandated-benefit law the *Supreme Court considered in Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The law at issue in that case required health insurance policies to provide certain mental health benefits. *Id.* at 729–30 & n. 11, 105 S.Ct. at 2383–84 & n. 11. The Court rested its decision that the law was not preempted on the "common-sense view" that a law that "regulates the terms of certain insurance contracts" qualifies as a law that, in the words of the saving clause, "regulates insurance." *Id.* at 740, 105 S.Ct. at 2389. The Court found further support for its conclusion in case law interpreting the phrase "business of insurance" in the McCarran-Ferguson Act, 15 U.S.C. sec.sec. 1011 et seq. Because mandated-benefit laws "regulate[ ] the spreading of risk," "directly regulate an integral part of the relationship between the insurer and the policyholder by limiting the type of insurance that an insurer may sell," and "impose requirements only on insurers," *id.* at 742–43, 105 S.Ct. at 2391, the Court found strong support for its conclusion that "regulation regarding the substantive terms of insurance contracts falls squarely within the saving clause as laws 'which regulate insurance.'" *Id.* Similarly, § 95 20 regulates the substantive terms of insurance contracts; it limits the circumstances in which an insurance policy can exclude or limit coverage for a preexisting condition, and it mandates that "[t]he preexisting condition limitation [in any such policy] shall be reduced" in certain situations. 215 ILCS § 95/20. As a mandated-benefit law (or at least its equivalent), the Illinois statute is not preempted by ERISA. *See Metropolitan*, 471 U.S. at 746, 105 S.Ct. at 2392–93.

The Supreme Court revisited the saving clause in *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Court there decided that certain common law causes of action arising under Mississippi law (for the improper processing of a claim for benefits under an employee benefit plan) were preempted by ERISA. After deciding that the state claims fell within ERISA's general preemption provision, the Court, applying *Metropolitan*, held that the Mississippi common law of bad faith did not regulate insurance within the meaning of the saving clause. Yet the Court went further. It agreed with the Solicitor General that "Congress clearly expressed an intent that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." *Id.* at 52, 107 S.Ct. at 1555. The Court concluded that the civil enforcement remedies found in § 502(a) "were intended to be exclusive," *id.* at 54, 107 S.Ct. at 1556; *see Tingey v. Pixley–Richards West, Inc.*, 953 F.2d 1124, 1132–33 (9th Cir.1992), and explained that the federal remedies found in the substantive provisions of ERISA displace all state causes of action, even if those causes of action otherwise fall within the saving clause, *see Pilot Life*, 481 U.S. at 56–57, 107 S.Ct. at 1557–58.

2.

In this case, we are asked to examine the combined effect of *Metropolitan* and *Pilot Life*. We begin with a point of agreement: Under *Metropolitan*, the state statute cited by Mr. Plumb and Fluid, 215 ILCS § 95/20, is not preempted by ERISA. That section does not provide a remedy, and even if it did, the remedy would be preempted by ERISA under *Pilot Life*. Mr. Plumb, however, prayed for an ERISA remedy in his complaint: the "benefits rightfully due and owing under the P[lan]" and for costs under ERISA § 502(g), 29 U.S.C. § 1132(g). R.26 at 17 para. 10. Nonetheless, Time maintains, and the district court agreed, that Mr. Plumb's claim conflicts with ERISA's remedial scheme and is preempted by ERISA. In their view, 215 ILCS § 95 20 cannot be en-

---

**7.** Illinois recently has enacted the Illinois Health Insurance Portability and Accountability Act, 1997 Ill. Legis. Serv. P.A. 90–30 (S.B.802) (West). The law repeals § 9520. and replaces it with a new comprehensive provision to deal with preexisting conditions.

forced in a suit by a beneficiary to recover benefits; rather, the statute can be enforced only by the State of Illinois to impose a fine on Time or to deny it a license. We believe, however, that the district court and Time's characterization misapprehends the interaction of *Metropolitan* and *Pilot Life.*

Section 502(a)(1)(B) provides that a participant may bring a civil action "to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The appropriate remedy under § 502(a)(1)(B) in this case therefore turns on the answer to the following question: What are the terms of the Time plan? The most obvious are those that are written in Time's insurance policy. In addition, contrary to Time's view, § 95 20 also becomes a term of its insurance policies. By its plain wording, § 95 20 writes a provision into all Illinois insurance policies that any "preexisting condition limitation period shall be reduced" if certain criteria are met. 215 ILCS § 95/20. It is fundamental insurance law that "[e]xisting and valid statutory provisions enter into and form a part of all contracts of insurance to which they are applicable, and, together with settled judicial constructions thereof, become a part of the contract as much as if they were actually incorporated therein." 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 19:1, at 19–2 to 19–4 (1996) (footnotes omitted). Policy terms that are in conflict with statutory provisions are invalid. *Id.* § 19:2, at 19–5 to 19–8; *cf.* 2 E. Allan Farnsworth, Farnsworth on Contracts § 5.1, at 2; *id.* § 5.8, at 68–75 (1990). This principle is part of the law of Illinois. *See, e.g., American Country Ins. Co. v. Wilcoxon,* 127 Ill.2d 230, 130 Ill.Dec. 217, 222, 537 N.E.2d 284, 289 (1989); *Harris v. St. Paul Fire & Marine Ins. Co.,* 248 Ill.App.3d 52, 187 Ill.Dec. 739, 742, 618 N.E.2d 330, 333 (1993); *Johnson v. American Family Mut. Ins. Co.,* 193 Ill.App.3d 794, 140 Ill.Dec. 783, 788, 550 N.E.2d 668, 673 (1990). Likewise, this court, in an ERISA case predating *Pilot Life,* held that an Indiana insurance code provision was not

preempted by ERISA and imputed the provision into an insurance policy that did not contain it. *See Wayne Chem., Inc. v. Columbus Agency Serv. Corp.,* 567 F.2d 692, 700 (7th Cir.1977), cited in *Metropolitan,* 471 U.S. at 742 n. 18, 105 S.Ct. at 2390 n. 18. Indeed, *Metropolitan* itself, although not involving a suit for benefits, seems to assume that mandated-benefit laws would affect the substantive terms of insurance policies by operation of law. *See* 471 U.S. at 740–47, 105 S.Ct. at 2389–93; *see also FMC Corp. v. Holliday,* 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990) ("The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer."); *id.* at 64, 111 S.Ct. at 411 ("[I]f a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts. . . .").

Section 95/20 therefore becomes a substantive term in all Illinois insurance policies, and § 502(a)(1)(B) of ERISA allows Mr. Plumb to sue to recover the benefits due under those terms. Our colleagues in other circuits have recognized that § 502(a)(1)(B) allows participants to recover benefits under ERISA plan terms as modified by non-preempted state insurance laws. *See Williams v. UNUM Life Ins. Co.,* 113 F.3d 1108, 1113 (9th Cir. 1997) (stating that, on remand, the district court should determine whether insurance policy is in compliance with non-preempted insurance law; "[i]f not, the terms of [the insurance code section] must be read into the UNUM policy"); *Ruble v. UNUM Life Ins. Co.,* 913 F.2d 295, 297 (6th Cir.1990) ("The Michigan Insurance Code clearly regulates insurance. If . . . the Insurance Code operated to write UNUM's coordination of benefits provision out of the group insurance policy, . . . nothing in ERISA would prevent the insurance policy from being enforced in its statutorily modified form.") (citing *Metropolitan*); *see also Donatelli v. Home Ins. Co.,* 992 F.2d 763, 765 (8th Cir.1993) (noting that non-preempted state statutes govern interpretation of insurance policies, but that state law remedies are preempted by § 1132).[8]

---

8. Cf. *Cisneros v. UNUM Life Ins. Co.,* 115 F.3d 669 (9th Cir.1997); *United of Omaha v. Business Men's Assurance Co.,* 104 F.3d 1034 (8th Cir. 1997); *Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449 (5th Cir.1991); *Henkin v. Northrop Corp.,* 921 F.2d 864 (9th Cir.1990).

■ Time and the district court read *Pilot Life* too broadly.[9] Time points to *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988) (per curiam), cert. denied, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989), and *In re Life Insurance Co.*, 857 F.2d 1190 (8th Cir.1988), for support; but those cases do not foreclose Mr. Plumb's claim. In *Kanne*, the court held that the plaintiffs' "state statutory claims for compensatory and punitive damages arising from delay in payment" were preempted under *Pilot Life* even if the statute fell within the saving clause. 867 F.2d at 493. The state statute in *Kanne* provided remedies, including punitive damages, for delayed payment; ERISA contains no such remedy for the mishandling of an insurance claim. *In re Life Ins. Co.* held that ERISA preempted Missouri's "vexatious refusal to pay statute." 857 F.2d at 1194–95. Neither case involved a statute akin to the mandated-benefit law in *Metropolitan*. Neither statute in those cases purported to supply or void a benefits-providing provision in an insurance policy. Rather, both statutes were similar to the laws at issue in *Pilot Life*. The complaint in *Pilot Life* prayed for damages for emotional distress and punitive damages under a common law cause of action for the improper processing of a claim for benefits. ERISA does not provide a remedy for such improper processing, except in § 502, which does not allow for the recovery of punitive or emotional distress damages, *see Harsch v. Eisenberg*, 956 F.2d 651 (7th Cir.), *cert. denied*, 506 U.S. 818, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992). Unlike claimants who seek punitive damages, emotional distress damages or a remedy for a wrong not recognized in ERISA, Mr. Plumb sought a remedy that is available under ERISA: He sought the benefits due under the terms of his plan, as amended by a non-preempted Illinois insurance statute. Generally, ERISA "does not regulate the

substantive content of welfare-benefit plans." *Metropolitan*, 471 U.S. at 732, 105 S.Ct. at 2385.[10] It therefore cannot be said that the Illinois statute's becoming part of the substantive content of the Time plan conflicts with ERISA's comprehensive scheme. To the contrary, "any action brought by a beneficiary to enforce the policy as so modified could only be brought under § 502 of ERISA, 29 U.S.C. § 1132." *Ruble*, 913 F.2d at 297. Because the district court's holding implies that the Illinois statute could have no effect on the terms of Time's insurance policy, we must vacate its judgment as it pertains to the claims against Time.

## D. *Issues for Remand*

### 1.

On remand, the district court will have to determine what, if any, remedy Fluid can obtain. Given the state of the record and the parties' submissions to this court, the resolution of the issue is best left to the district court. Upon inquiry at oral argument, Fluid's counsel informed us that it was seeking Mr. Plumb's benefits as an assignee of Mr. Plumb. That representation went unchallenged. Indeed, in its notice of appeal, Fluid purported to be appealing from the order dismissing Mr. Plumb's original claim against Time. However, none of the briefs mentions any assignment, and the record does not contain any such agreement. The district court's docket sheet has an entry that appears to show that Fluid and Mr. Plumb settled their dispute. Needless to say, the parties have not brought to their presentations in this court the precision we have a right to expect.

The validity of the assignment by Mr. Plumb to Fluid is important. Only participants and beneficiaries can recover benefits under the terms of an ERISA plan. See 29

---

**9.** *See generally* Martin Wald & David E. Kenty, ERISA: A Comprehensive Guide § 8.7 (1991 & Supp.1996).

**10.** We note that Congress recently amended ERISA to limit the extent to which a group health plan may impose a preexisting condition exclusion; the provision shall apply to group health plans for plan years beginning after June 30, 1997. See 29 U.S.C. § 1181. Another new

section provides that § 1181 shall supersede state laws related to preexisting condition exclusions, except for those state laws that are, generally speaking, more favorable to the insured. See 29 U.S.C. § 1191. The amendments, however, are prospective. See *Lockheed Corp. v. Spink*, — U.S. —, —, 116 S.Ct. 1783, 1792, 135 L.Ed.2d 153 (1996).

U.S.C. § 1132(a)(1). Fluid is neither. The cross-complaint is ambiguous in its prayer for relief, seeking a determination of the rights of Time plan participants and an injunction enjoining Time from denying coverage to those participants. Regardless of the cross-complaint's characterization, it appears to us that what Fluid wants is the payment of money damages-the costs of Kyle's medical care.[11] Our belief in this regard is confirmed by counsel's remark at oral argument that Fluid wants money, as Mr. Plumb's assignee under a settlement agreement, for the benefits owed to Mr. Plumb. Absent such an assignment, Fluid cannot seek the benefits itself under § 502(a)(1)(B) as an ERISA fiduciary. *See* 29 U.S.C. § 1132(a)(1)(B); *Coyne & Delany Co.*, 102 F.3d at 714. Nor can it seek legal relief under § 502(a)(3).[12] *See id.* at 715–17 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), and *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). "*Mertens* does not allow legal damages to be included as recoverable 'appropriate equitable relief' authorized under § 502(a)(3)." *Buckley Dement, Inc.*, 39 F.3d at 788; *accord Varity Corp. v. Howe*, — U.S. —, —, 116 S.Ct. 1065, 1076, 134 L.Ed.2d 130 (1996); *Reich v. Continental Cas. Co.*, 33 F.3d 754, 755 (7th Cir.1994), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995). Nor can Fluid seek damages under § 502(a)(2).[13] Any recovery under § 502(a)(2) for breach of fiduciary duty must go to the plan as a whole rather than to individual beneficiaries. *Anweiler v. American Elec. Power Serv. Corp.*, 3 F.3d 986, 992

(7th Cir.1993); *Coyne & Delany Co.*, 102 F.3d at 714. An order granting "individual benefits to a single participant … is not available under section 502(a)(2) … as it in no sense 'inures to the benefit of the plan as a whole.'" *Id.* at 715 (emphasis omitted) (quoting *Russell*, 473 U.S. at 140, 105 S.Ct. at 3089). Fluid, therefore, cannot recover benefits in its capacity as a fiduciary. It is not immediately apparent to us what other kind of equitable relief Fluid may be seeking as a fiduciary. On remand, Fluid must delineate more clearly the injunctive relief, if any, to which it feels itself entitled.

■ Fluid's right to recover benefits under the Time plan therefore depends on a valid assignment of Mr. Plumb's rights to Fluid.[14] Pension plan benefits are not assignable. 29 U.S.C. § 1056(d); *Misic v. Building Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1376 (9th Cir.1986). Conversely, medical benefits are assignable; an assignee of medical benefits "under an ERISA plan becomes a statutory 'beneficiary' and thus may use 29 U.S.C. § 1132(a)(1)(B) to collect." *Decatur Memorial Hosp. v. Connecticut Gen. Life Ins. Co.*, 990 F.2d 925, 927 (7th Cir.1993); *accord Kennedy v. Connecticut Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir.1991) (also stating that "an assignee cannot *collect* unless he establishes that the assignment comports with the plan"). Other circuits also have held that ERISA health care benefits are assignable. *See Hermann Hosp. v. MEBA Med. & Benefits Plan*, 845 F.2d 1286, 1289–90 (5th Cir. 1988); *Misic, supra*.[15]

**11.** See *Buckley Dement, Inc. v. Travelers Plan Administrators of Illinois, Inc.*, 39 F.3d 784, 787–88 (7th Cir.1994); *Coyne & Delany Co. v. Blue Cross & Blue Shield*, 102 F.3d 712, 714 (4th Cir.1996) ("Coyne's description of its claim as one for breach of Blue Cross' fiduciary duty does not alter the fact that it is seeking medical benefits which it claims are owed to [its employee].").

**12.** Section 502(a)(3) of ERISA provides that a participant, beneficiary or fiduciary may bring a civil action to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or … to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . .

29 U.S.C. § 1132(a)(3).

**13.** Section 502(a)(2) provides that the Secretary, a participant, beneficiary or fiduciary may bring an action "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109 provides that a fiduciary who breaches any fiduciary obligation "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a).

**14.** See generally 1 Ronald J. Cooke, ERISA Practice and Procedure § 4:47 (2d ed.1996).

**15.** In this case, although we cannot tell from the record, Mr. Plumb may have assigned his cause of action to recover benefits. Our colleagues in the Fifth Circuit, in an analogous situation, recently held that ERISA permits the assignment of

■ Of course, the purported assignment in this case did not occur until after dismissal in the district court; therefore, Fluid is claiming an assignment that enables it to press Mr. Plumb's claims on appeal and on remand. We see no reason not to allow such an assignment, however; "[e]lementary contract law provides that upon a valid and unqualified assignment the assignee stands in the shoes of the assignor and assumes the same rights, title and interest possessed by the assignor." *Moutsopoulos v. American Mut. Ins. Co.*, 607 F.2d 1185, 1189 (7th Cir. 1979); *see also Hartford Cas. Ins. Co. v. Argonaut–Midwest Ins. Co.*, 854 F.2d 279 (7th Cir.1988). At the time of assignment, if there was one, Mr. Plumb had the right to appeal the dismissal of his ERISA claims against Time. Therefore, if there was a valid assignment of his claim to Fluid, Fluid obtained the right to appeal Mr. Plumb's dismissal and to receive, on remand, any benefits Mr. Plumb could obtain under ERISA. The validity of the assignment and the determination of the rights obtained, if any, are issues for the district court on remand. In the absence of such an assignment, Fluid must rely on § 502(a)(3) as its vehicle for relief.

## 2.

Even if a valid assignment was made, Fluid's recovery will of course be contingent on the applicability of the non-preempted Illinois statute, 215 ILCS § 95/20. Given the district court's decision, the parties did not address in their appellate briefs whether § 95 20 applied to Mr. Plumb's situation. On remand, the parties will have to address whether the statute, given its effective date of January 1, 1994 (the same day that Time's coverage began), became a substantive term of Time's policy. If it did, a determination will have to be made as to whether Mr. Plumb satisfied the requirements of § 95/20. We do not mean to limit or suggest the parties' argumentation on remand, but mere-ly to highlight some of the issues left unresolved.

## Conclusion

For the reasons given in the foregoing opinion, the judgment of the district court is affirmed in part, vacated in part and remanded to the district court for proceedings consistent with this opinion.

AFFIRMED in part, VACATED and REMANDED in part

a claim for the breach of fiduciary duty, if the claim is expressly and knowingly assigned. See *Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entertainment Co.*, 105 F.3d 210, 215–16, 218–19 (5th Cir.), cert. dismissed, —— U.S. ——, 117 S.Ct. 2501, 138 L.Ed.2d 1006 (1997). Indeed, although the claim in that case involved breach of fiduciary duty under a pension plan, the Fifth Circuit held that it was assignable notwithstanding ERISA's non-assignment provision with respect to pension benefits.